**Johnny JENKINS and Middie Jackson, Plaintiffs–Appellants,**

v.

**Patrick KEATING and Michael Murray, Defendants–Appellees.**

No. 96–4201.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1997.

Decided June 16, 1998.

Armand L. Andry (argued), Oak Park, IL, for Plaintiffs–Appellants.

Lawrence Rosenthal, Mardell Nereim (argued), Benna R. Solomon, Susan S. Sher, Office of the Corporation Counsel, Chicago, IL, for Defendants–Appellees.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiffs-appellants, Johnny Jenkins and Middie Jackson, appeal from the district court's entry of summary judgment on Jackson's 42 U.S.C. § 1983 claim against Officers Patrick Keating and Michael Murray, defendants-appellees herein, as well as its decision to grant the defendants' motion *in limine* to exclude the testimony of one of Jenkins' witnesses at his § 1983 trial. We affirm.

## I. BACKGROUND

In November of 1990, Johnny Jenkins was temporarily relieved from his position as a Chicago police officer because of a broken finger on his right hand. On December 1 of that year, while still off-duty, he drove his

mother, Middie Jackson, to an apartment building that she owned, located at 4845 South Damen Avenue in Chicago, Illinois. Jackson was interested in seeing a tenant in the building, Ora Sharp, in order that she might retrieve some keys in Sharp's possession. Upon their arrival at the apartment, a dispute arose between Sharp and Jackson, and Sharp struck Jenkins with a frying pan. Both Jackson and Jenkins then left the premises. Meanwhile, the police received a call about a man in possession of a gun at the 4845 South Damen Avenue address. Officer John Rossi and his partner responded to the call. Sharp informed the officers that a male, armed with a handgun, had battered her. Officer Patrick Keating arrived upon the scene shortly thereafter. Rossi and his partner left to search the area for the battery suspect. Officer Keating remained to take a report from the complaining witness, Sharp. While he was speaking with her, she pointed over his shoulder and stated, "here they come." Keating turned and saw Jenkins and Jackson approaching the building.

What happened next is a bit unclear. Officer Keating claims that he repeatedly ordered Jenkins to remove his hands from his pockets, but he did not do so. Instead, Jenkins continued to walk towards him with his hands in his pockets. Keating drew his sidearm for fear that Jenkins had a gun, and once again ordered Jenkins to remove his hand from his pockets. Jenkins acquiesced. However, as Officer Keating began to reholster his weapon, Jenkins struck him with his fists. When Keating informed Jenkins that he was under arrest, Jenkins hit him again. A struggle ensued as Jenkins continued to resist arrest and punch Officer Keating. During the course of the altercation, Keating struck Jenkins. He also radioed in a "101," which is a call signaling that an officer is in distress and requires immediate assistance.

Two officers, Michael Murray and Thomas Coughlin, responded to the call for assistance. Upon their arrival at the scene, they saw Jenkins holding Officer Keating against a fence and punching him. Officers Murray and Coughlin pulled Jenkins off Keating. Jenkins continued to throw punches and resist arrest before being handcuffed and con-

veyed to the police station. Officer Murray later found a gun in Jenkins' automobile while conducting a post-arrest search of the vehicle.

Jenkins' version of the events in question is somewhat different. He alleges that, as he approached Officer Keating and Sharp, two bystanders, Perry and Kevin Coleman, immediately started beating him. Keating then radioed for assistance and joined in with the Colemans in punching him, Jenkins. Jenkins contends that Officer Murray arrived shortly thereafter and battered him as well. He further claims that Murray kicked him in the face and that, after being handcuffed, Keating kneed him in the face.

Lieutenant Henry Hoffenkamp, a supervising officer, was then called to the scene. At this time, a witness to the altercation, Jessica Cox, informed Hoffenkamp that she had observed Jackson pointing a can of mace at Keating and other individuals during the incident, and that she (Cox) physically knocked the can from Jackson's hand before the mace could be sprayed. A protective patdown search of Jackson's outer clothing revealed that she was in possession of a can of mace. Lieutenant Hoffenkamp ordered that Jackson be placed under arrest for aggravated assault based on Cox's report that Jackson had attempted to spray mace at several individuals, including Officer Keating, and the corroborating fact that a can of mace was discovered in Jackson's possession minutes after the altercation. Officer Keating subsequently filed the criminal complaint against her.

On March 22, 1991, plaintiffs Jenkins and Jackson filed a complaint in district court, alleging numerous federal and state claims against Officer Keating and other known and unknown officers. Because criminal charges were pending against Jenkins for battery and resisting arrest, and against Jackson for aggravated assault, arising out of the December 1, 1990, incident, the court stayed all proceedings on the defendants' motion. On October 22, 1992, the plaintiffs filed their first amended complaint, naming Officers Keating, Murray and Coughlin as defendants, and filed a second amended complaint on December 7, 1993, this time changing the

claims for which they were seeking relief.[1] Finally, Jenkins and Jackson filed their third and final amended complaint on January 29, 1994. In this complaint, Jenkins claimed that Officers Keating, Murray and Coughlin unlawfully arrested him and used excessive force on him, in violation of the Fourth Amendment and 42 U.S.C. § 1983. He further alleged that each of the named defendants committed a battery upon him, and that Officer Keating "allowed and maliciously, wilfully and wantonly permitted civilians to make physical contact of an insulting or provoking nature" against him, in violation of state law. Jackson also asserted a § 1983 claim against the officers for unlawful arrest, and alleged a state law violation against Keating, contending that he maliciously, willfully and wantonly made false charges against her. On July 22, 1994, the parties filed a joint motion to voluntarily dismiss Officer Coughlin as a defendant, which the court granted.

On March 23, 1995, the remaining defendants, Officers Keating and Murray, filed a motion *in limine* to bar the testimony of one of Jenkins' expert witnesses, Dr. Jules Shapiro. Dr. Shapiro was expected to testify regarding Jenkins' alleged inability to make a fist with his right hand on December 1, 1990, due to the broken finger he had sustained prior to that date. The court granted the defendants' motion, but expressly noted that Jenkins could seek reconsideration of the ruling at trial if he could demonstrate that Dr. Shapiro's testimony was relevant to the question of excessiveness of force. The defendants also filed a motion for summary judgment on Jackson's and Jenkins' claims. In an order dated May 15, 1996, the court dismissed Jenkins' battery claim against Murray without objection, and granted summary judgment in favor of the defendants on Jackson's and Jenkins' unlawful arrest claims. Thus, as the court explained, all that was left to adjudicate were the questions of "whether Keating and Murray used excessive

force in making what is a lawful arrest and whether Keating battered Jenkins." These remaining claims proceeded to a trial before a jury. A verdict was returned in favor of the defendants on both claims. The plaintiffs appeal.

## II. ISSUES

The appellants advance two arguments for our consideration—one as to Jenkins and the other as to Jackson. First, Jenkins contends he is entitled to a new trial on his "excessiveness of force" claim because the district court erred in granting the defendants' motion *in limine* to exclude the medical testimony of Dr. Shapiro. And second, Jackson alleges that the court improperly entered summary judgment in Officer Keating's favor on her 42 U.S.C. § 1983 claim for unlawful arrest.

## III. DISCUSSION

### A. *Admissibility of Dr. Shapiro's Expert Testimony*

Initially, we turn to Jenkins' claim that it was error for the district judge to have granted the defendants' motion *in limine* to suppress Dr. Shapiro's testimony regarding his, Jenkins', ability to make a fist with his right hand. The intricacies of Jenkins' argument is something we need not rehash, however, as it is clear from the record that he has waived this evidentiary issue on appeal by having failed to accept the court's invitation to reconsider the *in limine* ruling at trial.

On March 23, 1995, Officers Keating and Murray jointly filed a motion *in limine* to bar Dr. Shapiro's testimony that Jenkins had injured his right hand before the incident in question, thereby making it physically impossible for him to have formed a fist with that hand and, in turn, to have struck Keating with it. The gist of the officers' argument was that Jenkins had previously litigated, albeit unsuccessfully, the issue of whether he

---

1. The second amended complaint alleged that both Jenkins and Jackson were arrested without probable cause, in violation of the Fourth Amendment. In addition, Jenkins claimed that the defendants violated state law by making "malicious, willful and wanton" contact with him.

Jackson likewise alleged a pendant state claim, asserting that Officer Keating arrested her on charges he knew were false, and that he "made malicious, willful and wanton charges" against her.

"was able to strike, punch, push or fight with Officer Keating" at a Chicago Police Board disciplinary proceeding, and he was thus collaterally estopped from relitigating the matter in a subsequent trial.[2] More specifically, the officers contended that "[t]he Board determined that the plaintiff did in fact strike, push, wrestle and fight with officer Keating. Accordingly, the Board ... rejected plaintiff's assertion that he could not so act and also rejected Dr. Shapiro's testimony to that effect.... [S]ince the Circuit Court [of Cook County] has now affirmed that decision he [Jenkins] should be barred from relitigating the issues here." On March 29, 1996, the district judge issued a written order granting the defendants' motion *in limine* to bar Dr. Shapiro's testimony at trial. In so doing, the court expressly and unequivocally left its decision open for reconsideration, inviting Jenkins to renew his opposition to the *in limine* ruling before the conclusion of trial if he could establish to the court's satisfaction the relevance of Dr. Shapiro's testimony as to the issue of excessiveness of force:

> [A]n administrative adjudication agency subject to judicial review did find by a preponderance of the evidence that Johnny Jenkins was physically able to (and did) strike, push, wrestle and fight. So Johnny Jenkins is subject to estoppel on this issue if certain conditions are met. The issues are identical, the estopped party had a full hearing, resolution of the issue was essential to the prior decision, and the decision is final. All of these conditions are met here and the decision of the Police Board, after administrative review, forecloses any issue as to which Dr. Shapiro could testify. *See Crot v. Byrne*, 957 F.2d 394 (7th Cir. 1992); *Czajkowksi v. City of Chicago*, 1993 WL 11896 (N.D.Ill.1993). *Plaintiff may seek reconsideration of this ruling if he can show the relevance of the testimony to the narrow question of excessiveness of force.*

(R. 58, at 2 (emphasis added)). Jenkins failed to request reconsideration of the motion during the trial, and he neither called

Dr. Shapiro to testify nor made an offer of proof as to the testimony he intended to proffer.

■ It is, of course, the law of this Circuit that, in order to preserve for appeal the merits of a pre-trial ruling on a motion *in limine*, the party who unsuccessfully opposes the motion must accept the court's invitation to renew his or her challenge to it at trial. *See United States v. Addo*, 989 F.2d 238, 242 (7th Cir.1993) ("[B]ecause defense counsel failed to accept the trial court's invitation to renew and reargue the motion ..., the challenge to the motion *in limine* is deemed waived."); United *States v. Hoyos*, 3 F.3d 232, 236 (7th Cir.1993) ("Failure to accept the district court's invitation to renew his challenge to the motion *in limine* bars [the defendant's] challenge to the merits of the ruling on appeal.") (citing *Addo*). As we explained in *Addo*, "[i]f a motion is not acted upon, a litigant better renew it. He may not lull the judge into thinking that it has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion." *Addo*, 989 F.2d at 241 (quoting *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.), *cert. denied*, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991)) (internal quotations omitted). Here, the "ball was in Jenkins' court" to renew his challenge to the court's motion *in limine* ruling and demonstrate how Dr. Shapiro's testimony might have been relevant on the excessiveness of force question. Because he failed to seek reconsideration of the motion, Jenkins likewise failed to return the volley. He cannot now "pull a rabbit out of his pocket" and claim reversible error on the court's *in limine* ruling to bar Dr. Shapiro's testimony.

Just as significant to our waiver analysis is the fact that Jenkins failed to call Dr. Shapiro to testify at trial or make an offer of proof as to the testimony he would proffer. In *United States v. Plescia*, 48 F.3d 1452, 1462 (7th Cir.1995), the defendant, Plescia, sought to introduce the expert testimony of a witness who would support his theory that sur-

---

**2.** Jenkins, himself a police officer, had been charged with committing a battery upon Officer Keating, Officer Muriel, and Ora Sharp, in violation of the Chicago Police Board's rules of conduct. Jenkins was found guilty of the charges with respect to Keating and Muriel, but not Sharp.

veillance tapes recorded by the government, and used against him at trial, had been tampered with. However, a pre-trial hearing on the matter revealed that Plescia's witness had no intention of testifying as to his belief about whether the tapes had been altered. Nevertheless, the court did not exclude the testimony. Rather, the district judge invited Plescia to bring the witness to the stand during trial so he could hear the questions and the government's objections before ruling on the tapes' admissibility. But the defendant never called his expert to testify. On appeal, we declined to consider the merits of Plescia's arguments regarding the admissibility of the surveillance tapes since "[t]he defendants never called their expert to the stand, and thus they waived their claim that his [the expert's] testimony should have been permitted." *Id.* (citing *Addo*, 989 F.2d at 242). The only substantive difference between *Plescia* and the case sub judice is that the proffered expert testimony in *Plescia* was not excluded prior to trial, whereas the district court here made a pre-trial ruling to grant the defendants' motion *in limine* to bar Dr. Shapiro from testifying, expressly inviting Jenkins to seek reconsideration of the decision "if he [could] show the relevance of the testimony to the narrow question of excessiveness of force." In *United States v. Haddad,* 10 F.3d 1252 (7th Cir.1993), we noted that "[a] *conditional* ruling [on a motion *in limine*] by the district court is not preserved on appeal if the objecting party does not renew his or her objection at trial or seek reconsideration of that ruling." *Id.* at 1257 (citation omitted and emphasis added). It logically follows, then, that the party against whom the conditional *in limine* ruling is made must either seek a reconsideration of the ruling (if the condition is to seek reconsideration) *or* attempt to present the evidence, most likely through an offer of proof outside the presence of the jury, in order to preserve the issue for appeal. *See Fusco v. General Motors Corp.,* 11 F.3d 259, 262 (1st Cir.1993) ("Where a court rules *in*

*limine* that certain evidence is excluded but the ruling is merely tentative or qualified, then the proponent might well have to offer evidence at trial in order to preserve an appeal on the issue."); *Walden v. Georgia–Pacific Corp.,* 126 F.3d 506, 519 (3d Cir.1997) ("[W]here a district court makes a *tentative in limine* ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial."); *United States v. Estes,* 994 F.2d 147, 149 (5th Cir.1993) (criminal defendant must attempt to offer evidence that was excluded through Government's motion *in limine* to preserve issue for appeal); *Christinson v. Big Stone County Co-op.,* 13 F.3d 1178, 1180–81 (8th Cir.1994) (explaining that when motion *in limine* is "provisionally granted," party against whom motion is made must make offer of proof to preserve issue for appeal). Jenkins undertook neither of these two alternative courses of action—he failed to make an offer of proof as to Dr. Shapiro's testimony, nor did he accept the court's invitation to seek a reconsideration of its *in limine* ruling. As such, Jenkins has waived his argument that it was error for the court to have granted the defendants' motion *in limine* to suppress Dr. Shapiro's testimony regarding his ability to make a righthanded fist. In our view, the trial judge could not have related in simpler terms the fact that he was leaving open for reconsideration his decision regarding the motion *in limine*. If, for some reason, Jenkins had any doubts about the equivocal nature of that ruling, he should have inquired and sought a clarification of the court's order.

### B. Grant of Summary Judgment on Jackson's § 1983 Claim

With Jenkins' claim behind us, we next consider Jackson's contention that the district court improperly granted summary judgment in Officer Keating's favor on her 42 U.S.C. § 1983 claim for unlawful arrest.[3]

---

**3.** Although Jackson brought her false arrest claim against both Officers Keating and Murray, she only contends on appeal that summary judgment was inappropriate as to Keating. Specifically, her brief to this Court states, "Plaintiff

Jackson concedes that Defendant Murray was not involved in her arrest. All arguments as to Plaintiff Jackson concern only Defendant Keating." (Appellant's Br., at 24 n. 1). We shall

That court was bound to grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the parties' affidavits, if any, revealed that there was no genuine issue of material fact and that the moving party, Officer Keating, was entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, "all facts must be construed in the light most favorable to the party opposing the motion and the court must draw all inferences in favor of that party." *NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 234 (7th Cir.1995) (citing *Smart v. State Farm Ins. Co.,* 868 F.2d 929, 931 (7th Cir.1989)). We are likewise guided by these principles in conducting a *de novo* review of the trial judge's order granting summary judgment. *See Geier v. Medtronic, Inc.,* 99 F.3d 238, 240 (7th Cir. 1996) (citing *Perdomo v. Browner,* 67 F.3d 140, 144 (7th Cir.1995)).

The gravamen of Jackson's § 1983 claim is that Keating violated her Fourth Amendment right of freedom from unreasonable seizure by arresting her without probable cause. The district court provided two reasons as to why Keating was entitled to summary judgment. First, it was undisputed that Keating did not arrest Jackson. Rather, Lieutenant Hoffenkamp, a non-defendant, ordered her arrest. And second, Officer Keating was entitled to qualified immunity because two witnesses to the December 1, 1990, incident told the police that Jackson had committed a crime by attempting to "spray an officer and other persons with mace." Specifically, the court's order of May 16, 1995, reads, in relevant part:

> Middie Jackson claims damage from an unlawful arrest made by Keating and Murray. It is uncontested that Keating and Murray did not arrest Jackson. Someone else did. It is true, presumably, that Keating signed the complaint against Jackson but did so after arrest. Lt. Hoffenkamp, an additional responding officer, made that arrest. Moreover, it is undisputed that two bystanders told the addi-

tional officers that Jackson had attempted to spray an officer and other persons with mace.... An officer may rely on a bystander witness in making an arrest. At a minimum, Hoffenkamp (if he had been sued), and Keating (if he had made the arrest), would be entitled to qualified immunity. I award summary judgment to defendants against plaintiff Jackson.

(R. 68, at 2). We are in strong agreement with the trial court's line of reasoning.

### 1. Keating Did Not Arrest Jackson

██ "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (1983) (citations omitted and emphasis in original). The "constitutional deprivation" Jackson alleges is an unlawful arrest, that is, a seizure of her person without probable cause. Of course, the rub here is that Keating did not arrest Jackson, Lieutenant Hoffenkamp did. Keating merely performed a ministerial act in signing the criminal complaint against Jackson to bring her before the court *after Hoffenkamp placed her under arrest.*

We cannot conceive of a way in which Officer Keating caused, or participated in, Jackson's arrest. "[A] person has been 'seized' [arrested] within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 544, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Jackson admits to the defendants' Rule 12(m) statement that "Officer Keating did not arrest Ms. Jackson." In other words, she concedes that, by reason of Lieutenant Hoffenkamp's conduct, a reasonable person would not have believed she was free to leave the police station. And once Jackson was arrested, the constitutional violation she alleges had already taken place. Officer Keating would have had to have undertaken some action prior to, or perhaps at the time of, Lieuten-

---

thus limit our discussion to Jackson's "unlawful arrest" allegations against Officer Keating.

ant Hoffenkamp's order to arrest Jackson in order to have "caused" or "participated in" it. That is not the case here—Keating signed the criminal complaint against Jackson only after she was in custody and "seized" within the meaning of the Fourth Amendment.

In an attempt to save her claim, Jackson cites to a *Ninth Circuit case, Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir.1994), for the proposition that "an officer could be found liable under 42 U.S.C. § 1983 for signing a false complaint." (Appellant's Reply Br., at 4). *Sloman* certainly cannot be read so broadly and, in fact, its applicability to this appeal is tenuous at best. The plaintiff in that case, Sloman, was a leader of a community activist group that campaigned to place limits on growth and development in and around the City of Simi Valley, California. On October 13 and 14, 1986, Officers Hale and Rein, claiming that Sloman was standing on a median strip waiving a "growth-limit" campaign sign in front of oncoming cars, warned him about interfering with traffic. The following day, Hale once again encountered Sloman interfering with traffic, and issued a citation for it. Then, on October 19, 1986, Sloman attended an automotive trade fair, at which he was involved in a number of altercations while campaigning for his "growth-limits" cause. Officers Hale and Rein were also present patrolling the event. Tadlock and Allen, who operated booths at the fair, asked Hale and Rein whether Sloman could legally be removed from the premises. The Officers informed Tadlock and Allen that the police could remove Sloman on the basis of a citizen's complaint. Tadlock and Allen signed a citizen's complaint form, and a third officer, Officer Sliester, proceeded to arrest Sloman for a trespass violation. Sloman subsequently brought suit against, among other parties, Tadlock and Allen, claiming that because they were opposed to his "growth-limits" campaign, they conspired with the police to cause his arrest and prosecution by filing their citizen's complaint, in violation of his First Amendment right to free speech. The district court granted summary judgment in Tadlock's and Allen's favor. On appeal, the Ninth Circuit concluded that the grant of summary judgment was appropriate as to Allen, but not

Tadlock. With respect to Sloman's claim against the latter, the court explained:

> Tadlock's deposition testimony ... is sufficient to raise a genuine issue of fact as to whether he was motivated to sign the citizen's complaint because of Sloman's political beliefs. Moreover, Sloman has succeeded in raising a genuine issue of material fact as to whether there was probable cause to arrest him. He has also raised a genuine issue of fact as to whether Tadlock was engaged in "joint action" with Hale and Rein, thus satisfying the state action requirement of his claims under 42 U.S.C. § 1983.

*Id.* at 1474 (citations omitted). Whether or not we agree with the result reached in *Sloman* is irrelevant. What is significant is that the case is factually distinguishable from the present appeal in one very important way—Tadlock filed a citizen's complaint against Sloman before Sloman's arrest, whereas Officer Keating signed the criminal complaint against Jackson after Lieutenant Hoffenkamp placed her under arrest. As such, Tadlock could be said to have "caused" or "participated in" Sloman's arrest. Because Keating signed the complaint after Jackson's arrest, *Sloman* does not compel us to depart from our conclusion that Keating played no role in effectuating the constitutional violation alleged herein.

### 2. Qualified Immunity

Even if we assumed, *solely for the sake of discussion*, that Officer Keating did in fact cause or participate in Jackson's arrest, we still would have little trouble affirming the district court's grant of summary judgment, as it is clear that Keating is entitled to qualified immunity under § 1983.

"The necessity of protecting police officers from undue interference with their duties and from potentially disabling threats of liability has given rise to the doctrine of qualified immunity, which protects public officials performing discretionary functions against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Tangwall v.*

*Stuckey*, 135 F.3d 510, 514 (7th Cir.1998) (citations, internal quotations and alterations omitted). Qualified immunity thus shields a police officer from § 1983 liability "if *either* the federal law he is asserted to have breached was not clearly established at the time of the alleged violation or there exists no genuine dispute of material fact which would prevent a finding that his actions, with respect to following such clearly established law, were objectively reasonable." *Id.* at 515 (citing *Vargas–Badillo v. Diaz–Torres*, 114 F.3d 3, 5 (1st Cir.1997)) (emphasis in original). The constitutional right to be free from arrest without probable cause was, without question, "clearly established" prior to Jackson's arrest in 1991. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) ("Whether that [the defendant's] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it. . . ."). The pressing question, then, is whether a reasonable officer could have believed Jackson's arrest was lawful, in light of the clearly established right to be free from arrest without probable cause and the information Officer Keating possessed at the time he signed the criminal complaint. *See Tangwall*, 135 F.3d at 518 ("[Q]ualified immunity will shield a law enforcement officer . . . from § 1983 liability 'if a reasonable officer could have believed the [arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'") (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 538, 116 L.Ed.2d 589 (1991)) (emphasis omitted and alterations in original). We are confident that the arrest and/or signing of the complaint was constitutionally valid.

■ "When an officer has 'received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth,' he has probable cause" to arrest the accused perpetrator. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (quoting *Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir.1968)); see also *Tangwall*, 135 F.3d at 519 (quoting Gramenos); *United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir.1991); *Gerald M. v. Conneely*,

858 F.2d 378, 381 (7th Cir.1988) (citation omitted). Thus, when a supermarket security guard witnesses an individual shoplifting, and the police arrest the individual based on the guard's report, qualified immunity shields the arresting officers from § 1983 liability. *See Gramenos*, 797 F.2d at 439. Similarly, if a rape victim positively identifies her attacker to a police officer more than two months after the assault occurred, and that officer, in turn, relays the identification to a second officer who then makes the arrest, both officers are entitled to qualified immunity from suit under § 1983. *See Tangwall*, 135 F.3d at 520. So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent. *See id.* ("Because the law is clear that a believable victim's single identification can provide the basis for probable cause, a reasonable officer would thus have believed that Tangwall's arrest was constitutionally valid at that point in time.").

The rule set forth in *Gramenos* and its progeny does not bode well for Jackson. Jessica Cox, a witness to the incident between Officer Keating and Jenkins, signed a sworn affidavit attesting that she observed Jackson point a can of mace at Keating and other individuals during the altercation, and that she physically knocked the can from Jackson's hand before the mace could be sprayed. Lieutenant Hoffenkamp likewise filed an affidavit wherein he stated that Cox informed him about Jackson's possession of, and attempted assault with, the can of mace. It is uncontroverted that, after the struggle between Keating and Jenkins, the officer who conducted a protective patdown search of Jackson found a can of mace on her person. Lieutenant Hoffenkamp ordered Jackson's arrest, and Officer Keating signed the criminal complaint against her, on the totality of this information. We think it obvious that these facts fit squarely within the *Gramenos* rule that an officer has probable cause to arrest an individual on information obtained from an eyewitness who it seems

reasonable to believe is telling the truth. Cox observed Jackson pointing the can of mace at several individuals, including Officer Keating. She relayed this information to Lieutenant Hoffenkamp, and he effectuated Jackson's arrest based, in part, on Cox's report, as well as on the fact that a can of mace was found on Jackson's person. Hoffenkamp, in turn, passed on the information to Keating, who signed the complaint. There is nothing in the record to suggest that Lieutenant Hoffenkamp or Officer Keating had any reason to question Cox's sincerity or the accuracy of her observations, nor does Jackson argue to the contrary on appeal. Under these circumstances, even if we assumed that Officer Keating caused or participated in Jackson's arrest while acting under color of state law, we are of the opinion that he had probable cause to do so and is thus entitled to qualified immunity from § 1983 liability.

## IV. CONCLUSION

For the reasons stated, we hold that Jenkins has waived his claim against the district court's *in limine* ruling by having failed to accept the court's invitation to renew his challenge to such ruling at trial. We also conclude that the trial judge properly entered summary judgment in Officer Keating's favor on Jackson's § 1983 claim. The fact of the matter is that Keating neither caused nor participated in her arrest, and even if he did, he is shielded from § 1983 liability by the doctrine of qualified immunity.

AFFIRMED.