**Marshall SPIEGEL, Plaintiff–Appellee, Cross–Appellant,**

v.

**Joseph CORTESE, Detective, Defendant–Appellant,**

and

**James Hennelly and Holly Zielke, Defendants, Cross–Appellees.**

**Nos. 97–4113, 97–4236, 98–1790.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1999.

Decided Nov. 1, 1999.

As Amended Jan. 7, 2000.

Rehearing and Rehearing En Banc Denied Jan. 14, 2000.

G. Flint Taylor (argued), People's Law Office, David C. Thomas, Chicago-Kent College of Law, Chicago, IL, for Marshall Spiegel.

Jean Dobrer, Brenna R. Solomon (argued), Office of Corporation Counsel, Appeals Division, Chicago, IL, for Joseph Cortese in 97-4113 and 98-1790.

Brenna R. Solomon (argued), Susan S. Sher, Office of Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago in 97-4236.

Benna R. Solomon (argued), Office of Corporation Counsel, Appeals Division, James P. McCarthy, City of Chicago, Law Department, Chicago, IL, for Joseph Cortese, James Hennelly and Dennis Murphy in 97-4236.

Gregory J. Wojkowski, Benna R. Solomon (argued), Office of Corporation Counsel, Appeals Division, Chicago, IL, for Holly Zielke in 97-4236.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Marshall Spiegel sued Detective Joseph Cortese, four other City of Chicago police officers, an employee of the City's Department of Aging (collectively, the "individual defendants") and the City of Chicago under 42 U.S.C. § 1983, alleging that the individual defendants arrested him without

probable cause in violation of the Fourth Amendment and that the arrest was conducted pursuant to an unconstitutional official policy or custom. The district court previously dismissed Spiegel's claims against three of the officers and the employee from the city's Department of Aging, holding that the four were not personally involved in Spiegel's arrest. Cortese argued at three separate stages in the case that qualified immunity shielded him from liability, but the district court rejected his argument, and, after a jury trial, entered judgment against him. Thus Cortese only appeals the district court's decision, arguing that the trial judge should have granted his post-trial motion for judgment as a matter of law because he was entitled to qualified immunity. Spiegel cross-appeals, arguing that the district court erred in dismissing the claims against the individual defendants other than Cortese' and another police officer. The core issue in this appeal is whether qualified immunity shields a police officer who concludes that there is probable cause to arrest a suspect based on a putative victim's allegations that the suspect denies. Because we hold that qualified immunity applies in such a case, we reverse the judgment of the district court. As to Spiegel's cross-appeal, we affirm.

This lawsuit has its roots in an altercation between neighbors over noise at Hollywood Towers, a high-rise apartment complex in Chicago, Illinois. In January 1993, Loren Cherny and Min Bobin, then 73 and 74 years old, respectively, began renting an apartment directly above the apartment occupied by Spiegel and his wife Carol, who at the time were 36 and 42 years old, respectively. Soon after Cherny and Bobin moved in, the Spiegels began accusing them of making too much noise. Cherny and Bobin denied the accusations, but the Spiegels persisted in their accusations until Cherny and Bobin asked the condominium association to intervene and halt what they believed were excessive complaints by the Spiegels. The condominium association investigated the dis-

pute and ultimately concluded that the Spiegels' complaints were unfounded.

Around 6 p.m. on May 29, 1993, Carol Spiegel confronted Cherny and Bobin in front of their apartment, complaining that noise from their apartment prevented her from taking a nap. Shortly thereafter, Marshall Spiegel appeared in the hallway, about 10 feet away from Cherny and Bobin, carrying his seventeen-month-old son. Spiegel backed Cherny against a wall and yelled, "come on, hit me, you old fart." At that time Spiegel kneed him, bruising Cherny's upper thigh.

Spiegel recalled the altercation differently. He asserted that when he arrived with his son, he overheard Cherny and Bobin screaming at his wife, and he complained that Cherny and Bobin had been making too much noise. According to Spiegel, Cherny responded, "tough," stepped toward him and shoved Spiegel's chest with both his hands, and Bobin also shoved him. The doorman subsequently appeared and broke up the confrontation, returning the Spiegels to their apartment.

On May 31, 1993, Spiegel went to the police department and filed a police report alleging that both Bobin and Cherny had shoved him during the May 29th confrontation. Although the officer interviewing him filed a report based on the incident, he advised Spiegel to wait a few weeks and then request a summons against Cherny and Bobin at the warrant office. Spiegel accordingly on June 21 went to the warrant office and advised Sergeant Kajari, a City of Chicago police detective, that he wanted to file charges against Cherny and Bobin. Two days later, he returned to the office and obtained a summons against Cherny and Bobin for battery. On June 25, Cherny and Bobin went to the same police station to file their own report based on the May 29th incident and were interviewed by Detective Cortese, whom Sergeant Kajari assigned to investigate the report. Detective James Hennelly also was present during the interview. Cherny

and Bobin told Cortese and Hennelly that on May 29, Carol Spiegel knocked on their door around 6 p.m., and when they opened it, she began yelling about noise from their apartment. Cherny and Bobin further claimed that when Marshall Spiegel joined the altercation, he backed Cherny against a wall, dared Cherny to hit him and then kneed Cherny in the inner thigh. Cherny gave Cortese photographs of his bruised thigh, a report summarizing the incident that he filed with the condominium association and then showed Cortese the actual bruise.

Later the same day, Cortese reviewed the May 31st police report and documents Cherny and Bobin had provided relating to complaints both parties lodged with the condominium association after the altercation. In one complaint dated June 1, 1993, Cherny omitted mention of any physical blow by Spiegel. On June 25, Cortese called the Spiegels, spoke with Carol Spiegel and informed her that he needed to speak to her husband as soon as possible but did not see fit to question Carol at this time about the May 29th altercation. When Marshall Spiegel returned Cortese's call, Cortese told him that Cherny and Bobin had filed a battery charge against him and that he was subject to arrest and that he should report to the police station. Spiegel responded that he had filed charges against Cherny and Bobin two days earlier, and insisted that their charge against him was retaliatory. He further asserted that Cherny and Bobin had shoved him, that he had not physically attacked them and that he had corroborating witnesses, although he did not identify them. He also told Cortese that Cherny and Bobin had reported to the Illinois Department of Child and Family Services that he had used his child as a shield during the confrontation. Cortese gave Spiegel his *Miranda* warnings over the phone and advised him to retain an attorney. During the same phone call Spiegel spoke with Sergeant Kajari, and repeated his conversation with Cortese to him. Kajari advised Spiegel that he would not interfere with Cortese's investigation. After he retained an attorney, Spiegel followed Cortese's directive and reported to the police station, where he was arrested for battery. He was subsequently prosecuted for battery in Illinois state court and was acquitted of the charge after a jury trial.

In June 1995, Spiegel filed this action against the City of Chicago and five Chicago police officers—Detectives Cortese and Hennelly, Captain Brannigan, Sergeant Murphy and Sergeant Kajari. Spiegel alleged that: (1) his June 25, 1993 arrest violated the Fourth Amendment because it was not supported by probable cause; (2) the individual defendants conspired to deprive him of his Fourth Amendment rights; (3) the Fourth Amendment violation was carried out pursuant to an official policy or custom; and (4) the City was liable for any damages that might be assessed against the individual defendants based on the alleged unlawful arrest. Spiegel subsequently amended his complaint to add a claim against Holly Zielke, an employee of the City of Chicago's Department of Aging, alleging that she conducted a biased investigation (although the complaint does not specify how she became involved) and urged Cherny and Bobin to charge Spiegel, and urged the individual defendants to arrest him.

The individual defendants thereafter moved to dismiss the action, contending that Spiegel's arrest was supported by probable cause, and furthermore that the defendant-officers were entitled to qualified immunity; that Zielke was not responsible for any actions challenged by Spiegel; that Spiegel's detention was not excessive; and that Spiegel's allegations of a "conspiracy" to deprive him of constitutional rights were not supported in the record. The City filed a separate motion to dismiss, arguing that Spiegel's arrest was lawful and that the claim seeking to hold it liable for any damages assessed against any of the individual defendants was premature

because no defendant had as yet been adjudged liable.

The district court granted the defendants' motion to dismiss the claims against Hennelly, Brannigan, Murphy and Zielke, holding that they were not responsible for the decision to arrest Spiegel, and also dismissed the conspiracy claim and the two claims against the City of Chicago, holding that Spiegel had inadequately alleged a conspiratorial agreement, that Spiegel's arrest was not the result of an unconstitutional policy or custom and that the prejudgment respondeat superior claim against the City was premature. The court denied the motion as to the claims against Cortese and Kajari, holding that Spiegel had stated a claim based on the detectives' alleged failure to further investigate the charge against Spiegel once Spiegel had questioned the credibility of Cherny and Bobin.

In July 1996, Cortese and Kajari made a $5,001 offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure that included a disclaimer of liability. After Spiegel rejected the offer, Cortese and Kajari moved for summary judgment, again arguing that qualified immunity applied to the decision to arrest Spiegel. The district court denied the motion, ruling that a genuine issue of material fact existed as to whether a reasonable officer would have concluded that there was probable cause to arrest Spiegel based on Cherny's and Bobin's report, given that Spiegel had insisted that the charge was bogus. In particular, the court noted that it was undisputed that Cortese never attempted to verify Cherny's and Bobin's account, to interview witnesses to the dispute or to investigate Spiegel's accusations that both Cherny and Bobin had shoved him and filed a false charge against him.

The case proceeded to trial, at which Cherny, Spiegel, Cortese and Kajari testified about the altercation, the investigation and Spiegel's arrest. Spiegel also called Hanan Hughes, who lived on the same floor as Cherny and Bobin. Hughes testified that she observed the confrontation from her apartment, and at one point stepped into the hallway and asked whether everything was all right. She further testified that both the Spiegels as well as Cherny and Bobin were yelling, and that she saw Cherny shove Spiegel and exclaim, "you shouldn't have tried to kick me." She noted that she did not see Spiegel kick or knee Cherny, but admitted that the two were at one point standing close together such that Spiegel was blocking her view of Cherny.

The jury returned a verdict against Cortese in the amount of $5,000 "on his claim that his constitutional rights [sic] to be free from unreasonable arrest were violated." Cortese then moved for judgment as a matter of law, arguing a third time that he was entitled to qualified immunity, and sought a remittitur in the amount of the $5,000 judgment against him. The district court denied the motion, and Spiegel moved for a determination that he did not owe the costs Cortese had incurred in light of the fact that Cortese had made a $5,001 offer of judgment under Fed. R.Civ.P. 68, arguing that because the offer included a disclaimer of liability, it was less favorable than the $5,000 judgment he obtained. After the parties briefed the issue, the district court agreed that the disclaimer rendered less favorable the offer of judgment, and accordingly declined to award Cortese costs under Rule 68. Spiegel also moved for an award of attorneys' fees and costs as a "prevailing party" under 42 U.S.C. § 1988, and the district court subsequently awarded him attorneys' fees of $129,700 and costs of $5,787.38.

Cortese's appeal primarily challenges the district court's ruling that qualified immunity did not apply to his decision to arrest Spiegel. In addition, Cortese argues that the district court erred in denying him costs under Fed.R.Civ.P. 68 and in allowing the jury award to stand. In his cross-appeal Spiegel contends that the district court erred in dismissing his claims against Hennelly and Zielke.

■ We review de novo the district court's finding that Cortese was not entitled to qualified immunity. *See Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir.1998). Qualified immunity shields from liability government officials who are performing discretionary functions in the course of duty to the extent that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir.1995) (internal quotation marks and citations omitted). In determining whether qualified immunity applies, this court considers: "(1) whether the plaintiff has asserted a violation of a federal constitutional right, and (2) whether the constitutional standards implicated were clearly established at the time in question." *Id.* Although qualified immunity is a defense to a § 1983 suit, the burden of meeting the elements of this two-part test rests on the plaintiff. *See id.*

■ It is undisputed that the constitutional right to be free from arrest without probable cause was clearly established at the time Spiegel was arrested in 1993. *See Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir.1998) (noting that this right was clearly established by at least 1991). Because qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law," a law enforcement officer will be immune to claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Thus, qualified immunity applies not only to those officials who correctly determine that probable cause to arrest exists, but also to those governmental officials who reasonably but mistakenly conclude that it does. *See Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). In this context, the law tolerates reasonable error because "officials should not err

always on the side of caution because they fear being sued." *Id.* at 229, 112 S.Ct. 534 (internal quotation marks and citation omitted). Probable cause is itself "a commonsense determination, measured under a reasonableness standard," *Tangwall v. Stuckey*, 135 F.3d 510, 519 (7th Cir.1998), and is present if at the time of arrest "the facts and circumstances within [the arresting officer's] knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir.1999). The existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information. *See Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir.1994). Consequently, "as long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent." *Jenkins*, 147 F.3d at 585. Thus, the reviewing court should ask whether an official "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact." *Humphrey*, 148 F.3d at 725. Moreover, this court has emphasized that once probable cause has been established, officials have "no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Eversole*, 59 F.3d at 718 (internal quotation marks and citation omitted).

In light of these standards, we disagree with the district court's conclusion that Cortese is not immune to Spiegel's claims. In Illinois, a person commits a battery when he: (1) intentionally or knowingly without legal justification (2) causes bodily harm to another or makes physical contact of an insulting or provoking nature with

another. 720 Ill. Comp. Stat. Ann. 5/12–3(a). Cherny's statement to Cortese that he had been struck by a man 37 years his junior, the bruise he displayed and his account of the escalating conflict with Spiegel together provided ample grounds for Cortese to believe that Spiegel had committed a battery. Although Spiegel contends that further investigation would have revealed that Cherny's charges were retaliatory, it is well-established that " '[w]hen an officer has received … information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause.' " *Tangwall*, 135 F.3d at 519 (quoting *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986)).

Spiegel nonetheless contends that because a host of inconsistencies marred Cherny's and Bobin's report, a reasonable officer would not have relied on it. He asserts in particular that Cortese knew that: (a) there was a longstanding dispute between Cherny and Spiegel; (b) Cherny had filed numerous charges against Spiegel, including one with DCFS; (c) Cherny had contradicted himself in his report, claiming at different points during the same interview that Spiegel had kneed him in the groin, kicked him in the thigh and had attempted to kick him "in the balls" but missed; (d) Cherny's report that he was battered is inconsistent with the written account of the incident Cherny prepared for the condominium association that did not mention a physical attack; (e) Cherny had admitted that he had shoved Spiegel during the incident; (f) Cherny filed his charge nearly a month after the altercation, but two days after Spiegel had filed his charges against Cherny and Bobin; and (g) the photograph of Cherny's bruise, purportedly taken near the time of the dispute, and the bruise that Cherny showed Cortese during the interview appeared the same even though nearly a month had elapsed.

■ We do not agree with Spiegel that these purported facts would have caused a reasonable officer to take further investigative steps. While the lengthy and ongoing dispute culminating in the altercation and the other charges Cherny had filed might tend to establish Cherny's bias, these facts do not render Cherny's report incredible as a matter of law. We are also of the opinion that Spiegel's other arguments are either irrelevant, such as the condition of Cherny's bruise almost a month after the alleged battery, or insignificant, such as Cherny's varying accounts of how exactly Spiegel struck him. More importantly, no clearly established precedent required Cortese to resolve these inconsistencies before arresting Spiegel. Of course it is true that where "information from or about a [putative] victim of crime would lead a reasonable officer to be suspicious," the officer should conduct further investigation. *Hebron*, 18 F.3d at 422–23. But police officers need not exclude every suggestion that a victim is not telling the truth. Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established.[1] Consequently, "the law does

---

1. It may be possible to misinterpret a passage in *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998) to support the proposition that officers must establish probable cause as to *each and every* element of a crime before they are authorized to make an arrest. This is not the law. Although *Kelley*, 149 F.3d at 646, says that once "an officer has established probable cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence[,]" this passage should not be read to mean that only if each and every element has been established may an officer make an arrest. To the contrary, caselaw is very clear that:

[w]e begin with a recognition that probable cause is a relatively fluid concept. It exists "if 'at the moment the arrest was made … the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that' " the arrestee was committing, or had committed, a crime. *Hunter*, 502 U.S. at 228, 112 S.Ct. at 537 (quoting *Beck*, 379 U.S. at 91, 85 S.Ct. at 225). As an objective test, probable cause is "less than a rule of more-likely-than-not, but how much less depends on the circum-

not require that a police officer conduct an incredibly detailed investigation at the probable cause stage." *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir.1988). Accordingly, "[t]he inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation." *Kelley*, 149 F.3d at 647. Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause. The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial. *Cf. Hebron*, 18 F.3d at 423 (noting that police "are entitled to act on the basis of observable events and let courts resolve conflicts about mental states"). We refuse to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a victim's account.

■ Next, Spiegel contends that Cortese had a duty to interview available witnesses, including in particular Hanan Hughes, who would have cast doubt on the reliability of Cherny's and Bobin's complaint. This argument fails because

> the police need not automatically interview available witnesses, on pain of the risk that a jury will require them to pay damages. Good police practice may require interviews, but the Constitution does not require police to follow the best recommended practices. There is a gap, often a wide one, between the wise and the compulsory. To collapse those two concepts is to put the judicial branch in general superintendence of the daily operation of government, which neither the fourth amendment nor any other part of the Constitution contemplates.

stances," *Gramenos*, 797 F.2d at 438, including "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S.

*Gramenos*, 797 F.2d at 442. Again, once probable cause is established as to each element of an offense, an arrest is lawful. Moreover, we note that it is far from clear that interviewing Hughes or even Carol Spiegel would have undermined Cortese's determination that he had probable cause to arrest Spiegel. Carol Spiegel obviously was biased, and although Hughes testified that she did not see Spiegel strike Cherny, she also testified that she heard Cherny exclaim that Spiegel should not have tried to kick him.

Spiegel nonetheless points to a number of cases that, he contends, establish that further investigation is required before a suspect may be arrested on the report of a victim whose credibility has been put into question. We disagree with Spiegel's reading of these cases. While in *Gramenos* we cautioned that "a prudent officer may balk" at a witness who describes a crime occurring "long ago" or who is "babbling or inconsistent," *Gramenos*, 797 F.2d at 439, more relevant is the holding in *Gramenos* that a security guard's report of a theft, which the suspect vehemently denied, provided probable cause, even though additional witnesses were available but not interviewed. Likewise, our admonition in *Hebron*, 18 F.3d at 423, that a report of "questionable reliability" dictates further investigation is less significant for current purposes than our holding there that police officers are entitled to act "on the basis of observable events," and that credibility disputes are left for the jury. *Id.* Cortese observed a bruise in the area where Cherny said Spiegel had struck him, as well as the demeanors of two elderly victims who claimed they were frightened of Spiegel, and reasonably concluded that a battery had been committed.

160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).
*Tangwall*, 135 F.3d at 518–19 (brackets, quotations, and citations in original); *see also Eversole*, 59 F.3d at 718.

Rather, this case is more closely analogous to *Gerald M.* In that case, three children of two feuding families were involved in a confrontation. A police officer detained two of the boys solely on the basis of a report by the third boy that the two had assaulted him and stolen his bicycle. The plaintiffs brought a § 1983 claim, alleging that their detention was not supported by probable cause and was therefore unconstitutional. In affirming a grant of summary judgment for the officer, we stressed that the report of a victim "who it seems reasonable to believe is telling the truth" is sufficient to establish probable cause. *Gerald M.*, 858 F.2d at 381 (internal quotation marks and citation omitted). We consequently rejected the plaintiff's argument that the victim was not credible because of the ill will between his family and those of his aggressors, as well as their claim that a more complete investigation was required. *See id.* While it is true that Spiegel, unlike the plaintiffs in *Gerald M.*, points to actual inconsistencies in the victims' report, the dispositive principle applied there—that a putative victim's report in most cases establishes probable cause—is fully applicable here.

▮ Next, we turn to Spiegel's cross-appeal, which challenges the dismissal under Fed.R.Civ.P. 12(b)(6) of the claims against Zielke and Hennelly and of the conspiracy claim. The district court properly dismissed these claims. Spiegel's amended complaint alleges that Zielke "urged" Cortese and others to charge and arrest Spiegel. But Spiegel did not allege that Zielke had authority to arrest him, and the allegation that she simply urged the police to arrest Spiegel, without more, does not give rise to liability under § 1983. *See, e.g., Jenkins*, 147 F.3d at 583 (only those who participate in or cause a constitutional deprivation are subject to § 1983 liability).

▮ As to Hennelly, he is entitled to qualified immunity for relying on Cortese's determination of probable cause in arresting Spiegel. The conclusion that Hennel-

ly's actions were proper is bolstered by our recent holding in *Jenkins*, 147 F.3d at 585, wherein we stated as follows:

"[w]hen an officer has 'received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth,' he has probable cause" to arrest the accused perpetrator. *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir.1986) (quoting *Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir.1968)) (other citations omitted). Thus, when a supermarket security guard witnesses an individual shoplifting, and the police arrest the individual based on the guard's report, qualified immunity shields the arresting officers from § 1983 liability. *See Gramenos*, 797 F.2d at 439.... So long as a reasonably credible witness ... informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity [even] if the arrestee is later found innocent. *See [Tangwall*, 135 F.3d at 520].

In the case *sub judice*, Hennelly relied on information from a fellow police officer, supported by his own independent investigation, that there was probable cause to believe that Spiegel had committed battery. If law enforcement officials enjoy qualified immunity whenever they reasonably rely upon information provided by ordinary citizens, or public servants such as emergency medical personnel, *see Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir.1994), or security guards, *see Tangwall*, 135 F.3d at 520, it would be odd to now hold that an officer relying on reasonable information from a fellow officer is somehow entitled to less protection from civil liability.

Finally, we uphold the dismissal of Spiegel's conspiracy claim because his bare allegations are insufficient to demonstrate an agreement among the defendants to deprive him of a constitutional right. *See*

*Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir.1991) (conspiracy claim cannot survive dismissal if allegations "are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy").

The district court's judgment against Cortese is REVERSED. As to the cross-appeal, the judgment dismissing the claims against Hennelly and Zielke, and the conspiracy claim, the district court's judgments are

AFFIRMED.