In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1168

ANTHONY MATTHEWS and ROBERT GILLESPIE,

*Plaintiffs-Appellants,*

*v.*

CITY OF EAST ST.LOUIS, VINCENT ANDERSON and
LARRY GREENLEE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-CV-870—**Michael J. Reagan**, *Judge.*

ARGUED FEBRUARY 23, 2012—DECIDED MARCH 27, 2012

Before FLAUM and TINDER, *Circuit Judges*, and SHADID,
*District Judge.*\*

SHADID, *District Judge.* Anthony Matthews and Robert
Gillespie appeal the district court's grant of a motion

---

\* The Honorable James E. Shadid, United States District
Court, Central District of Illinois, sitting by designation.

for summary judgment in favor of the defendants in this case. For the following reasons, we affirm the district court's grant of summary judgment to the defendants.

## I. BACKGROUND

The following facts are taken according to Matthews and Gillespie. On February 21, 2009, Appellants Matthews and Gillespie were involved in a physical altercation with employees of the Club Casino ("Club"), a nightclub located in East St. Louis, Illinois. The altercation began when Matthews and Gillespie, an R&B singer and his promoter, along with a group attempted to enter the club without paying a cover-charge because they were invited to the club for promotional purposes. When the group arrived, initially they were informed they were free to enter the club. However, when entering the lobby, they were confronted by a large security guard who was screaming at them and demanding payment. The group decided to pay, and when Matthews attempted to pay for himself and a dancer in the group, the club owner, Cedric Taylor, grabbed his arm and the large security guard who was screaming at them struck Matthews in the face. A melee ensued and numerous security staff struck and kicked Matthews and Gillespie. Both men sustained numerous visible injuries. After the beating, the employees took the two outside, handcuffed them and called the police.

The first officer on the scene was Lieutenant Vincent Anderson, recognized as a superior officer by his white shirt. Anderson was the acting shift commander that

night. Anderson repeatedly yelled to Matthews and Gillespie that he ran this town, in response to the two men explaining that they were jumped by security staff. After which they stopped trying to explain themselves and resigned to be arrested. Another officer, Larry Greenlee, arrived on the scene to a disturbance call, but did not know the specific nature of the disturbance. Greenlee attempted to speak with security staff, but was directed to speak with Taylor. When interviewed by Greenlee, Taylor stated that Matthews struck him in the face. Greenlee stated that he heard one of the two arrestees admit to hitting Taylor, so he filled out complaints against both individuals and Taylor signed them. Matthews and Gillespie were taken to Greenlee's squad car and placed in the rear seat, though they were never told they were under arrest. Both were charged with assault and battery.

At some point during the investigation, Greenlee was informed that there were video cameras that surveilled the lobby and presumably would show what happened. Greenlee chose not to check the video system. Taylor stated that the video system was maintained by an outside company and was constantly rolling, recording over itself every thirty to sixty days, which meant the altercation was taped-over prior to this action commencing. Taylor stated that he never requested the video because he felt it was unnecessary.

In October 2009, Matthews and Gillespie filed a five-count complaint in the district court alleging violations of 42 U.S.C. § 1983 against the City of East St. Louis, and officers Vincent Anderson, Lester Anderson, and Greenlee

and La Bon Vie Corporation, d/b/a Club Casino and its president and owner, Cedric Taylor. In June 2010, they amended the complaint and the district court granted their motion to voluntarily dismiss Lester Anderson without prejudice. They then filed an amended complaint containing five counts. Count 1 alleges Taylor, acting in concert with Club employees as part of a conspiracy with the City through Anderson and Greenlee used excessive force against them. Count 2 alleges the same individuals unlawfully seized, detained and prosecuted them. Count 3 alleges the City failed to instruct, supervise, control and discipline its officers. Count 4 was a state law claim alleging negligence against Taylor and the Club in hiring, retaining and supervising employees and as alternative to Counts 1-4, Count 5 alleged assault and battery against Taylor and the Club.

The district court granted summary judgment on Counts 2 and 3 in favor of all defendants and dismissed the state law claims without prejudice. Matthews and Gillespie conceded in their response to defendants' motion that summary judgment should be granted as to Count 1. As to the remaining counts, the district court held that at the time of the altercation, Taylor and the Club were not functioning as state actors for purposes of § 1983. The district court found that Taylor and the Club did not have a pre-existing arrangement to use off-duty police officers as security and the witnesses who stated that the security staff was comprised of off-duty officers based their beliefs on speculation. Also, even if they were off-duty officers, they were not performing a police function. Lastly the district court found that the

two failed to show a conspiracy between the City and Taylor and the Club. The district court also granted summary judgment as to the City, Anderson and Greenlee holding that there was probable cause to arrest Matthews and Gillespie and therefore there was no unlawful seizure/arrest against Greenlee. Additionally, the district court held that Anderson had no personal involvement or an affirmative link to the arrest and therefore he was not liable. The district court noted that probable cause defeats a claim of malicious prosecution and Matthews and Gillespie failed to show an express policy, widespread practice, or that their arrests were caused by someone with final policymaking authority as is required to sustain a claim of municipal liability.

## II. DISCUSSION

A grant of summary judgment is reviewed *de novo*, construing the facts and drawing all reasonable inferences in the light most favorable to Matthews and Gillespie. *Castronovo v. Nat'l Union Fire Ins. Co.*, 571 F.3d 667, 671 (7th Cir. 2009).

Matthews and Gillespie argue that officer Greenlee lacked probable cause to arrest them both. In support of this, they offer four arguments: (1) Greenlee failed to exercise any discretion in assessing the credibility of the witnesses; (2) Greenlee knew of the existence of a video-tape which would exonerate the two arrestees and chose to ignore it; (3) the totality of the circumstances should have demonstrated to a reasonable officer that there

was no probable cause to arrest Matthews and Gillespie; and (4) Greenlee lacked individualized probable cause for the arrest of the men.

Probable cause is a determination made from assessing whether, based on the facts and circumstances at the time of the arrest, a reasonable officer would conclude that the suspect has committed or is committing a crime. *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). The sufficiency of the evidence for a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false. *Id*. As such, "as long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing, a crime, the officers have probable cause". *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (quoting *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998)). Additionally, "this court has emphasized that once probable cause has been established, officials have 'no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence.'" *Id*. (quoting *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995)).

Matthews' and Gillespie's four arguments will be addressed in turn, but the facts pertaining to each are largely duplicative. They first argue that Greenlee failed to exercise any discretion in arresting the two of them. In support, they state that the evidence as Greenlee saw it upon arriving showed two handcuffed men who were badly beaten and protesting their innocence. According to them, this showed that any reasonable

officer would have concluded that they were the victims rather than the aggressors. They further argue that Greenlee testified that he "takes things at face value" and believes victims are telling the truth whenever they talk to him, apparently without thought. This ignores the fact that when Greenlee arrived on scene, he spoke with the Club owner Cedric Taylor, who gave him a seemingly reliable account of what happened. Taylor stated that the two men tried to enter the Club without paying and when they were asked to leave, one struck him in the face. Greenlee did attempt to speak with Matthews and Gillespie, but apparently they were difficult to understand, and Taylor then signed the complaints against the two men. There is nothing to indicate that Taylor's statement was incredible. The fact that he had no visible injury and the two in handcuffs did means little to Taylor's credibility. The identity of the winner of a fight is not always indicative of who was the initial aggressor. Greenlee's investigation may have been brief, but his reliance on Taylor's statements was reasonable.

Matthews and Gillespie next argue that Greenlee refused to view the videotape that conclusively would show what happened. A videotape is certainly a valuable piece of evidence and in many cases can be conclusive. However, as stated above, once an officer has probable cause, he need not seek out exculpatory evidence. Here, probable cause was established by Taylor, therefore he need not continue to investigate. It is correct to say that all reasonable avenues of investigation must be pursued, but given the atmosphere with which Greenlee

was confronted, it was not unreasonable for him to elect not to view the tape. To hold otherwise would put an undue burden on police to ascertain whether a videotape existed prior to making an arrest for an offense committed outside of their presence. There was evidence to support probable cause and Greenlee did not need to conduct any further investigation.

Matthews' and Gillespie's third argument is that the totality of the circumstances suggest that a reasonable officer would find there was no probable cause. As previously discussed, this is not the case. Matthews and Gillespie again rely largely on the argument that because they had visible injuries, a reasonable officer would assume they were not the aggressors. According to Matthews and Gillespie, a basic assessment of the situation would indicate to Greenlee, and presumably any reasonable officer, that Taylor's story was obviously false. A basic assessment of the situation would show that Matthews and Gillespie were visibly injured and handcuffed. Nothing about this suggests that Greenlee was acting unreasonably when he concluded, after speaking with the owner of the business, that these two were the initial aggressors. Especially when considering that the owner of the business outside of which they were sitting told Greenlee that the two tried to enter without paying, then refused to leave, and then started a fight. The district court correctly noted that the events as described by Taylor indicated that the two men were involved in a physical altercation with security staff of the Club and their injuries support that story; they do not negate its truthfulness. Greenlee's

statements to the two men that they should file a report and that this type of stuff happens all the time do little to negate the fact that probable cause was established when Taylor gave Greenlee a credible account of the altercation.

Finally, Matthews and Gillespie argue that Greenlee lacked individualized probable cause to arrest the two men for battery, because Taylor stated only one man struck him. Matthews and Gillespie argue that a charge of disorderly conduct cannot be sustained because there was not a breach of the peace nor did anyone report to be alarmed and disturbed even though the two men had to be physically removed from the Club by security. At a minimum, everyone involved in the altercation was alarmed and disturbed. And undoubtedly, the peace was breached during a fight in the lobby of a nightclub after which two men had to be handcuffed and the police were called. Regardless, it was reasonable for Greenlee to believe that disorderly conduct occurred, even if later the evidence could not sustain a conviction. We need not address the issue of qualified immunity for Greenlee because there was probable cause to arrest both Matthews and Gillespie.

Contrary to their assertion, Greenlee was not merely a pawn, he was an officer who reasonably relied on a credible statement from a witness that was supported by the totality of the circumstances. Furthermore, there was sufficient probable cause to arrest each Matthews and Gillespie.

Matthews and Gillespie next argue that the district court erred when it granted summary judgment against

Lieutenant Anderson because he encouraged the false arrest, condoned it, or turned a blind eye to it. In order for a supervisor to be liable, they must be "personally responsible for the deprivation of the constitutional right." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 1995) (quoting *Gentry v. Duckworth*, 555, 561 (7th Cir. 1995)). To show personal involvement, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see". *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).

Anderson's involvement was nothing more than reporting to the location and telling Greenlee to do his job. Additionally, Greenlee had probable cause to arrest Matthews and Gillespie, which means there was no constitutional violation for Anderson to condone. As the district court noted, Anderson had minimal involvement, amounting to his awareness that Taylor signed the complaints against Matthews and Gillespie. Aside from that, he had little, if any, personal involvement. We need not address whether he had qualified immunity because there was probable cause for Greenlee to arrest Matthews and Gillespie.

Matthews and Gillespie next argue that the City is liable for the actions of its officers. A municipality cannot be held liable for a constitutional violation in the absence of a custom, policy or practice that effectively caused or condoned the alleged constitutional violations. *See, e.g., Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010); *Monell v. New York Dep't of Social*

*Services*, 436 U.S. 658 (1978). Further, an inadequacy in police training can serve as a basis for liability under Section 1983, but only where the failure to train amounts to deliberate indifference to the citizens the officers encounter. *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Matthews and Gillespie argue that even if the officers are not liable for false arrest, the City may still be, citing *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2009). *Thomas* is quite instructive in this instance. There, Cook County argued it could not be liable if all its employees were acquitted, relying on *Los Angeles v. Heller*, 475 U.S. 796 (1986), for that proposition. *Id.* at 304. The Court disagreed, noting that *Los Angeles* was a case in which the municipality could not be found liable when its officers committed no constitutional violation in arresting the plaintiff. *Id*. We specifically noted that the situation would differ if the officers were acquitted based on a defense of good faith, because there is still an argument that the city's policies caused the harm, though the officer was acting in good faith. Here, there was no constitutional violation, therefore no municipal liability.

Finally, a finding of probable cause defeats Matthews' and Gillespie's claim of malicious prosecution, regardless of whether it was properly developed below.

### III. CONCLUSION

For the foregoing reasons, the judgment is AFFIRMED as to all defendants.