**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2016[*]
Decided January 15, 2016

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1052

| | |
|---|---|
| ISAAC FAULKNER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:13-cv-00762-PMF |
| | |
| JAMES FENOGLIO, | Philip M. Frazier, |
| *Defendant-Appellee.* | *Magistrate Judge.* |

**O R D E R**

Isaac Faulkner, an Illinois inmate, appeals the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting that Dr. James Fenoglio, the prison's medical director, was deliberately indifferent in treating his fractured wrist. A magistrate judge concluded that Faulkner had not produced evidence from which a jury reasonably could find that the doctor was deliberately indifferent. We affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

We construe the facts surrounding the treatment of Faulkner's wrist injury in his favor, as he is the non-movant. *See Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Faulkner injured his wrist playing basketball at the Lawrence Correctional Facility and was taken immediately to the prison's health care unit. Faulkner, in extreme pain, thought that his wrist was broken. He was examined by Dr. Fenoglio, who suspected a fracture and directed that the wrist be wrapped in an Ace bandage and iced. The doctor also prescribed two painkillers and ordered an X-ray to be taken on the next available date. Dr. Fenoglio at the time did not think that further treatment was needed because the suspected fracture did not appear to be "displaced" (in other words, the bones were not misaligned). Dr. Fenoglio then left it to his staff to carry out the orders. For three days, however, a medical technician did not dispense one of the two prescribed painkillers to Faulkner. And only on the fourth day was an X-ray of Faulkner's wrist eventually taken.

Dr. Fenoglio then looked at the X-ray, diagnosed a non-displaced fracture, gave Faulkner a sling, and referred him to an orthopedic specialist. Faulkner, however, did not get in to see the specialist for sixteen more days. (It took a week for health-unit staff just to call the specialist's office.) While he waited to see the specialist, Faulkner submitted a grievance report saying that the pain medications were not working and that his hand and fingers were swollen and discolored. The orthopedic specialist, who finally saw Faulkner 20 days after his injury, placed a cast on his wrist and arm, telling him that the delay in receiving a cast later may cause arthritis and pain.

Five days later, in a follow-up appointment with Dr. Fenoglio, Faulkner reported that he was experiencing symptoms of possible nerve damage in his hand—pain, numbness, and tingling. Dr. Fenoglio noted that Faulkner's hands felt cold and clammy and that he might have reflex sympathetic dystrophy syndrome (damage to the nerve system that can be caused by trauma such as a bone fracture). Dr. Fenoglio asked Faulkner to come back the next day for follow-up, ordered another X-ray, and referred him to the orthopedic specialist for a second time.

Prison staff failed to carry out one of Dr. Fenoglio's orders and delayed others. Because Faulkner was in segregation, prison staff denied him permission to see Dr. Fenoglio for the follow-up appointment.   Health-unit staff then took 8 days to arrange his follow-up appointment with the specialist and 19 days to carry out the X-ray. In the meantime Faulkner submitted another grievance report stating that he still felt pain, numbness, and a tingling feeling in his hand.

Faulkner later was transferred to another correctional facility and seen by an orthopedic specialist a third time to have his cast removed. He continued to receive painkillers for his hand.

Faulkner then brought this deliberate-indifference suit, asserting that Dr. Fenoglio (1) prevented him on the day of the injury from being sent to an emergency room, where he could have received an X-ray and cast without delay; (2) delayed giving him painkillers; and (3) delayed arranging for him to be seen by specialists.

A magistrate judge, presiding with the parties' consent, granted summary judgment in favor of Dr. Fenoglio. Faulkner, the court concluded, failed to point to facts that would support an inference that the doctor knew about and disregarded an excessive risk to his health. According to the court, Faulkner failed to identify evidence showing that Dr. Fenoglio's response to his injury fell outside the applicable standard of care for a wrist fracture or reflex sympathetic dystrophy syndrome, or that Dr. Fenoglio—as opposed to support staff—delayed delivery of prescribed medications or the specialist referrals. Faulkner may have believed that he could have received better and more prompt care, the court added, but his position reflects "disagreement with the level of care provided," which is insufficient to show deliberate indifference.

On appeal Faulkner challenges the court's conclusion that he lacks evidence showing that Dr. Fenoglio's treatment decisions fell far afield of the standard of care. In his view, the doctor's decision to treat him conservatively with an Ace wrap, ice, and painkillers, rather than sending him immediately to an emergency room for an X-ray and cast, departed from the standard of care. Faulkner contends that the tight Ace wrap, left on for 20 days while he waited to receive a cast, created an obvious risk of nerve damage. Faulkner points in support to the Illinois Department of Corrections nursing treatment protocol on fractures and to an untitled document describing first aid and emergency care treatment for fractures.

But the magistrate judge properly concluded that Faulkner lacked evidence that Dr. Fenoglio's treatment fell outside the applicable standard of care or created a risk of serious harm. Neither document submitted by Faulkner calls for the treatment he says he needed (an immediate X-ray and cast). Nor does either document mention any possible harm caused by Ace wraps or specify a course of action for cases of suspected nerve damage. These documents thus do not permit an inference that Dr. Fenoglio's response was "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see Holloway v.*

*Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Faulkner next contends that the magistrate judge erred in concluding that Dr. Fenoglio is not responsible for the delays and missed appointment caused by his staff. Faulkner argues that Dr. Fenoglio, as medical director, should have intervened to ensure his orders were followed.

But § 1983 requires personal responsibility—a plaintiff must show the defendant knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012); *Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009). The record evidence does not reflect that Dr. Fenoglio knew that the medical technicians delayed delivering one of the prescribed pain medications by three days or that on two occasions staff took an entire week to arrange appointments for Faulkner to see outside specialists. Nor does the record suggest that Dr. Fenoglio was aware that prison staff refused to allow Faulkner to attend his follow-up appointment. The magistrate judge properly concluded that a jury could not reasonably find Dr. Fenoglio responsible for the delays or any misconduct of the prison's staff toward Faulkner. *See Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010) (affirming grant of summary judgment in favor of director of medical services at jail because there was no evidence "suggesting that [he] was aware that [nurses were] performing incompetent assessments of suicidal inmates but nevertheless acquiesced in that practice").

AFFIRMED.