**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2017[*]
Decided February 27, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-1820

| | |
|---|---|
| OCTAVIUS JORDAN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| *v.* | No. 14-cv-987-PP |
| MILWAUKEE COUNTY, et al., | Pamela Pepper, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Octavius Jordan, a Wisconsin prisoner, appeals the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting that prison staff were deliberately indifferent to the freezing temperature in his unit and to his asthma and chronic back pain. The district court concluded that Jordan had not produced evidence from which a jury reasonably could find that any of the defendants were deliberately

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

indifferent. Because we conclude that Jordan created a genuine issue of fact as to whether some of the defendants were deliberately indifferent to the conditions of his unit, we vacate the judgment in part and remand for further proceedings.

The facts surrounding Jordan's condition-of-confinement claim are disputed, but we construe them in Jordan's favor, as he is the non-movant. See *Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Jordan attests in a declaration that while incarcerated in the Milwaukee House of Correction in late 2013 his unit was "freezing cold to the point where you could see ice forming on the windows and you could see your breath." To try to keep warm, Jordan wrapped himself in a blanket from his bed, though he was not allowed to use the blanket in the common area. Jordan says that he filed grievances complaining about the cold, which exacerbated his asthma and caused him to catch a cold and then the flu. Jordan also submitted affidavits from three other prisoners who attested that the prison was extremely cold and that they had complained of the cold to prison officials. Two of those prisoners testified that the prison had been frigid during the previous winter, before Jordan's incarceration.

Disputing this, the defendants submitted evidence that Jordan's unit was not cold. Rebecca Goss, a correctional officer who worked in Jordan's unit on at least one of the days that winter, attested that the unit was a reasonable temperature and explained that blankets could not be worn in the common area for safety reasons. The prison's heating and cooling mechanic (who is not a defendant) attested that, while there is no temperature data recorded for Jordan's unit during the time in question, data from other parts of the prison during that time show reasonable temperatures and, he continued, the prison's heating system would not allow the extreme cold Jordan alleges in his unit.

The facts surrounding Jordan's medical claims are undisputed. Jordan did not receive an inhaler for the first five weeks of his incarceration. Based on information obtained during his intake, when Jordan described his asthma condition and medical staff tested his air flow, Jordan was "placed on asthma protocol" according to the policy of Armor Correctional Health Services, Inc. (the agency that Wisconsin has contracted to provide healthcare at the prison). The next day Jordan told Floyd Elftman, a nurse practitioner, that he had previously used an albuterol inhaler but had no current prescription for one; at the time his pulse oxygen ratio was normal, and Elftman did not prescribe an inhaler. A few weeks later, Jordan fell ill with a cold and then the flu, and medical staff evaluated him numerous times. Jordan told Elftman that he'd had an asthma attack, but Elftman told him that inhalers cost more than breathing treatments,

and if he had another attack he was to notify medical services and he would be given an immediate breathing treatment. Jordan had three respiratory calls in seven days and then was referred to a physician. That physician finally prescribed the inhaler.

During the same five-week period, Jordan also was not given the specific pain medication—gabapentin—that, he said, had been prescribed by his primary-care doctor for his chronic back pain and arthritis. Jordan told Elftman at intake of this prescription, but Elftman prescribed naproxen instead, telling Jordan that gabapentin was not approved by the FDA. A few days later Elftman supplemented the naproxen with a prescription for carbamezapinet (an anticonvulsant sometimes used to treat nerve pain), but discontinued it after Jordan reported it to be ineffective. After Jordan experienced the respiratory episodes, he saw the physician, who also treated his pain and prescribed gabapentin.

Jordan then brought this deliberate-indifference suit. He named as defendants the Milwaukee House of Correction, Armor Correctional Health Service, Goss, Elftman, a doctor, a nurse, the prison superintendent, and two assistant superintendents. Jordan asserted that all of the defendants were deliberately indifferent in failing to keep his unit at a reasonable temperature and in refusing him an inhaler and gabapentin.

The district court granted summary judgment in favor of all of the defendants. On the conditions-of-confinement claim, the court ruled that Jordan's declaration, and that of three other prisoners who attested that the prison was sometimes extremely cold, had created a genuine issue of fact regarding the coldness of the temperature in his unit. But, the court continued, Jordan lacked evidence that any of the defendants except Goss knew of the allegedly freezing temperature. And Goss, the court concluded, did not show deliberate indifference to the cold because she allowed Jordan to use his blanket in his cell. On the medical claims, the court ruled that Jordan failed to point to any evidence that anyone except Elftman was personally responsible for the decision to deny him an inhaler and gabapentin. And in any event, Jordan did not submit evidence that that course of treatment substantially departed from accepted professional standards. Finally, noting that the Milwaukee House of Correction is not a suable entity and that Jordan should have named the county instead, the district court determined that neither the county nor Armor could be held liable because Jordan lacked evidence that either had a custom or policy of refusing certain medical treatments or of failing to maintain reasonable temperatures.

On appeal Jordan argues that his declaration and those of the other three inmates are sufficient for a jury reasonably to find that the defendants knew about the freezing temperature in his unit but did nothing to adequately address the problem. We agree, but only as to Goss, the three prison administrators (Hafemann, Hernandez, and McKenzie), and the county.

As the district court correctly recognized, extreme cold may violate the Eighth and Fourteenth Amendments. See *Haywood v. Hathaway*, 842 F.3d 1026, 1030 (7th Cir. 2016); *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997); *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013). Like the district court, we conclude that Jordan and his fellow prisoners' attestations of freezing temperatures during winters in the prison are enough to create a genuine dispute about the temperature of Jordan's unit.

We part company with the district court on the element of deliberate indifference. A jury reasonably may believe that Goss, who worked in the unit, and the superintendent and assistant superintendents who oversaw the prison, had to have been aware of such extreme temperatures in Jordan's unit, especially given the attestations that Jordan and other inmates submitted numerous grievances about the cold. See *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) (evidence that administrator "must have known" about risk of harm posed by conditions of confinement is sufficient for jury to find deliberate indifference); *Haywood*, 842 F.3d at 1030–31 (evidence that warden knew of extreme cold sufficient for jury to find deliberate indifference). And if the unit was as cold as Jordan represents, a jury may well believe that doing nothing other than allowing Jordan to use his blanket in his cell was "so plainly inappropriate [a response] as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Haywood*, 842 F.3d at 1031 (quoting *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008)) (reversing grant of summary judgment when prisoner attested to frigid conditions and guards failed to provide other means of warmth); see also *Dixon*, 114 F.3d at 643 (reversing grant of summary judgment when prisoner in freezing cell had only standard issue blanket and clothes).

Moreover, Jordan's evidence that the prison was extremely cold for two consecutive winters despite frequent inmate grievances about the situation is enough for a jury reasonably to infer that the failure to provide adequate heat was not just inadvertence but "a conscious decision not to take action" on the county's part, so as to hold it liable for a custom of failing to provide adequate heat. *Glisson v. Ind. Dep't of Corr.*, No. 15-1419, 2017 WL 680350, at *7 (7th Cir. Feb. 21, 2017); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (evidence of custom suffices to hold

governmental entity liable for constitutional torts). We note that as the district court correctly determined, the Milwaukee House of Correction "is not a legal entity separable from the county government which it serves and is therefore not subject to suit" under § 1983, see *Whiting v. Marathon Cnty. Sheriff's Dep't.*, 382 F.3d 700, 704 (7th Cir. 2004), and so we substitute the county as defendant, see *Ball v. City of Indianapolis,* 760 F.3d 636, 643 (7th Cir. 2014).

Finally, these defendants are not, as they argue, entitled to qualified immunity on this claim. It has long been settled that failing to provide adequate warmth to inmates violates their constitutional rights. See *Dixon*, 114 F.3d at 642.

But that is as far as we can go for Jordan. Jordan has provided no evidence that any of the medical defendants knew of the freezing temperatures, and § 1983 requires personal responsibility. See *Matthews v. City of E. St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012); *Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009).

As for his medical claims, Jordan's arguments on appeal are unpersuasive. Jordan contends, for instance, that by refusing to prescribe an inhaler and gabapentin, Elftman impermissibly persisted in a course of treatment known to be ineffective and based his treatment decision on cost. But Jordan must do more than show that he was not given the very best of treatment; he must show that Elftman's course of treatment was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (quoting *Cole v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996)). Jordan pointed to no evidence from which a jury reasonably could conclude that Elftman's course of treatment was not based on accepted medical judgment. Although both the inhaler and gabapentin were subsequently prescribed by a doctor who saw him, "evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim." *Petties,* 836 F.3d at 729; *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). And the cost of care can be a permissible factor in choosing between acceptable treatments. *Petties,* 836 F.3d at 730.

Given that a jury could not find that Elftman acted with deliberate indifference in treating Jordan's medical needs, neither Armor nor the county can face any liability for that treatment. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Pyles v. Fahim,* 771 F.3d 403, 412 (7th Cir. 2014). Likewise, the administrative defendants could not have faced liability independently of Elftman because these defendants had deferred to his

exercise of medical judgment. See *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655–57 (7th Cir. 2005). Finally, the undisputed evidence shows that neither the doctor nor the nurse that Jordan sued ever examined Jordan, reviewed Elftman's work, or made any decisions about his care. Without evidence of their personal responsibility, they cannot be held liable. *Matthews*, 675 F.3d at 708; *Knight*, 590 F.3d at 462–63.

Jordan also challenges the district court's refusal to recruit counsel, maintaining that the court did not adequately consider a mental health condition that he says impairs his ability to focus. But the district court correctly considered whether Jordan was competent to litigate his particular case, see *Romanelli v. Suliene*, 615 F.3d 847, 854 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc), and reasonably concluded that he was, given the straightforward nature of his claim and able filings that reflected his ability to carry out discovery and prosecute his claim.

Accordingly, we VACATE the judgment and REMAND to the district court for further proceedings on the claims against Goss, Hafemann, Hernandez, McKenzie, and the county, related to the alleged cold. The judgment in favor of the remaining defendants related to the medical claims is AFFIRMED.