**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 23, 2017
Decided July 12, 2017

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 16-3212

| | |
|---|---|
| MICHAEL J. ALDOUS, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Western Division. |
|     *v*. | |
| | No. 3:15-cv-50145 |
| CITY OF GALENA, ILLINOIS, et al., | |
|     *Defendants-Appellees*. | Frederick J. Kapala, |
| | *Judge*. |

**O R D E R**

Michael Aldous worked as a Plumbing and Rental Housing Inspector for the City of Galena, Illinois. After the City fired him, Aldous sued the City, its mayor, and the City Administrator, claiming they fired him for exercising his First Amendment rights by criticizing the City for failing to enforce code requirements and ignoring the Americans with Disabilities Act's accessibility requirements. The district court dismissed the federal claims for failure to state a claim, holding that Aldous had spoken out in the course of his employment and thus his speech was not protected under the First

Amendment. The district court then refused to exercise supplemental jurisdiction over the state law claims. Aldous appeals.

I.

Because this case comes to us on appeal from a motion to dismiss, we recite the facts in the light most favorable to the plaintiff. *Roake v. Forest Preserve Dist. of Cook County*, 849 F.3d 342, 345 (7th Cir. 2017). According to Michael Aldous, the City of Galena went for many years without a building inspector. As a result, local contractors cut corners and failed to comply with many code provisions. In May 2013, the City hired Aldous as the City's Plumbing Inspector; he was later appointed Rental Housing Inspector.

Aldous proved to be extremely competent in his dual-inspector roles. Those jobs required him to review building permit applications for compliance with building and plumbing codes, as well as to conduct field inspections. Unfortunately for Aldous, his enforcement of the ordinances, especially after years of neglect, didn't sit well with contractors and homeowners. Strict compliance with the Code provisions caused additional delays and extra costs. This led to many complaints to the City.

While the City allegedly received many complaints, there were several specific instances that especially rubbed the City the wrong way. First, when a new veterinary clinic was opening, Aldous refused to approve the proposed construction plans because they did not comply with the code provisions related to oxygen systems. As a result, Aldous granted the clinic only a temporary occupancy permit until the City Fire Inspector intervened and granted the clinic a variance from the code provisions. Aldous criticized this decision to both the Fire Inspector and the City Administrator, Terry Moran.

Second, according to Aldous, he frequently expressed concern to Moran that permits were being issued without the City ensuring that contractors were licensed. During these exchanges, Moran told Aldous to work with the contractors. He was concerned that Aldous' strict code enforcement was causing friction with the various contractors and city employees.

Finally, when the City was renovating its old City Hall building for use as a police station, a contractor asked Aldous why the renovation plans were not ADA-compliant. In turn Aldous and the contractor spoke with the City Engineer, who told the contractor

to bid the project as-is. The City apparently had relied on the architect who believed the City was only bound by the provision of the Illinois Accessibility Code.

Aldous later contacted the State of Illinois Capital Development Board. He inquired whether the City needed to comply with the federal ADA,which has more stringent requirements than the Illinois Accessibility Code. The Board confirmed that the ADA governed. Aldous also independently researched the issue and likewise concluded that the ADA governed the renovation.

Aldous then met with Moran, telling him that it was his duty to ensure compliance with the ADA. Aldous also informed Moran that the Illinois Capital Development Board had confirmed his understanding that the ADA governed the renovation. According to Aldous, Moran became visibly angry upon learning that Aldous had spoken with the Board. Aldous also had several heated discussions with the City's building and electrical engineers, insisting in these conversations that the bathrooms needed to be ADA-compliant.

In his role as Rental Inspector, Aldous likewise ran into enforcement problems. He regularly cited landlords for code violations and noted that earlier inspections had ignored the violations. When Aldous brought up the issue with Moran, Moran told him to work with the landlords. And on one occasion, in August 2014, the City Fire Inspector stepped in and reached a compromise with a landlord which Aldous believed was insufficient to address the code violation.

Moran asked Aldous to resign about a month later, but Aldous refused, saying that he was just doing his job. After meeting with the Mayor, Terry Renner, Moran fired Aldous, telling him: "I have talked with the City Attorney and the Mayor. Your strict enforcement of the codes has upset other City Inspectors, Galena property owners, and tradesmen in the community. Your employment as an inspector for the City is just not working out with us. Your employment is ended, effective immediately."

Aldous responded by filing a lawsuit against Renner (the Mayor) and Moran (the City Administrator), alleging the defendants fired him in violation of his First Amendment rights. He also sought to hold the City liable under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), for the alleged violation of his First Amendment rights. Additionally, Aldous sued the defendants under several state law theories. The district court granted the defendants' motion to dismiss the federal claims

and then declined to exercise supplemental jurisdiction over the remaining state law claims. Aldous appeals.

## II.

On appeal, Aldous argues that he sufficiently alleged a First Amendment claim for retaliation. To establish such a claim, a public employee must show his speech is constitutionally protected. That is, the speech must be made as a private citizen (rather than pursuant to official duties), and must involve a matter of public concern. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 510–11 (7th Cir. 2007). Specifically, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006).

In this case, the district court dismissed Aldous' complaint because he alleged he was fired for speech made pursuant to his role as a Plumbing and Rental Property Inspector. This court reviews that determination *de novo*. *Roake*, 849 F.3d at 345.

The district court did not err in dismissing Aldous' complaint. Aldous alleged he was fired for speaking out about code violations and the City's failure to enforce the code, but all of that speech took place in the context of his official duties. He spoke to property owners whose buildings he was inspecting, to other inspectors, and to City employees and State officials from whom he sought guidance on his interpretation of the codes and the ADA.

In response, Aldous stresses that his speech concerned a matter of public concern—the safety of citizens—and that he had no personal motive for discussing the code violations. But, under *Garcetti*, statements made pursuant to an employee's official duties are not protected under the First Amendment. Simply put, "public employees have no cause of action under the First Amendment when they are disciplined for speaking pursuant to their official duties, even if the speech is on a matter of public concern." *Roake*, 849 F.3d at 347. While Aldous has alleged that he was a dedicated and diligent employee, that apparently isn't what the City wanted. So while Aldous may be able to state a state-law whistleblower claim, his firing did not implicate his First Amendment rights. Under these circumstances, the district court properly dismissed Aldous' First Amendment claim.

The district court also properly dismissed Aldous' *Monell* claim against the City because, without a viable First Amendment claim against the individual defendants, the City cannot be liable under *Monell. Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (2012). Finally, after dismissing the federal claims, the district court dismissed the state supplemental claims as well, but without prejudice, allowing Aldous to refile in state court. The district court acted well within its discretion in declining to exercise supplemental jurisdiction, given that Aldous still had time to file in state court and that the district court had not expended a great deal of judicial resources on this case.

## III.

The City of Galena fired Michael Aldous from his job as Plumbing and Rental Housing Inspector apparently because Aldous insisted on doing his job. He was enforcing the city codes,and told his bosses as much. But because all of his speech occurred within the sphere of his job responsibilities, it is not protected speech for purposes of the First Amendment. Accordingly, the district court properly dismissed Aldous' First Amendment claims against the Mayor and City Administrator. With no underlying claim, dismissal of the *Monell* claims was also appropriate and the district court did not err in refusing to exercise supplemental jurisdiction over the state law claims. We AFFIRM.