NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 13, 2016[*]
Decided January 26, 2018

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-2138

| | |
|---|---|
| KELVIN NORWOOD, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 11-CV-988 |
| PARTHASARATHI GHOSH, et al., *Defendants-Appellees*. | Charles R. Norgle, *Judge*. |

**O R D E R**

Plaintiff Kelvin Norwood, an Illinois prisoner, suffered from chronic right-knee pain for many years, leading to two surgeries, the second of which was a total replacement of his right knee with an artificial joint. Norwood sued a number of defendants, including several doctors and a physician's assistant employed by Wexford Health Sources, a contractor providing health care to Illinois prisoners. Suing under 42

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2)(C).

U.S.C. § 1983, Norwood alleged that the defendants violated the Eighth Amendment prohibition on cruel and unusual punishment by ignoring his need for treatment. As a result, Norwood asserted, his right knee joint was damaged and his pain aggravated. He also brought a claim of intentional infliction of emotional distress under state law and sought an injunction that would compel Wexford and the warden at his prison to treat his knee injury and manage his pain.

The district court recruited counsel for Norwood. Both sides took a substantial quantity of discovery on defendants' care or lack of care for Norwood's knee from 2006 through 2014, when the knee was replaced. The district court granted all defendants' motions for summary judgment, and Norwood has appealed. He now pursues his claims only against Wexford employees Dr. Parthasarathi Ghosh and Physician's Assistant LaTanya Williams.

Because we are reviewing a grant of summary judgment, we must view the evidence and factual disputes in the light reasonably most favorable to Norwood as the non-moving party. E.g., *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). We therefore do not vouch for the objective accuracy of all factual assertions. But viewing the evidence through the proper summary judgment lens, we must assume that Norwood has been the victim of serious institutional neglect of, and perhaps indifference to, his serious medical needs over at least eight years. Despite that evidence, this case illustrates the difficulties that prisoners often encounter both in obtaining at least minimally adequate health care and in seeking damages for inadequate medical care.

The first problem Norwood faces is that the remedial system of legal doctrines that has been built upon 42 U.S.C. § 1983 focuses primarily on *individual* responsibility. To avoid summary judgment, Norwood needed to come forward with evidence that would allow a reasonable jury to find that Dr. Ghosh or P.A. Williams was, as an individual, deliberately indifferent to his serious medical needs. Our *de novo* review of the evidence convinces us that he has not met that burden.

As we detail below, the evidence would allow a jury to find that Norwood suffered from serious medical needs in the form of diseases in and injuries to his right knee, causing significant pain and restricting his ability to walk, exercise, move, and even sleep. Between a right-knee injury in 2006 and full knee-replacement surgery in 2014, Norwood encountered, we must assume, repeated delays in medical treatment, inadequate pain treatment, and failures to deliver medication and other treatments ordered by the prison's medical staff. A major problem for Norwood in this lawsuit is that responsibility for his medical care has been diffused so widely that he has not been able to offer evidence

sufficient to support a finding that either Dr. Ghosh or P.A. Williams was deliberately indifferent to his or her individual responsibilities for his care.

In *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782 (7th Cir. 2014), we addressed a similar problem and ultimately affirmed summary judgment for the individual medical care providers. We also affirmed summary judgment for Wexford Health Sources, the same company that contracted to provide health care to Norwood in this case. As we explained in *Shields*, controlling precedent in this circuit held then (and it still holds now) that a corporate entity like Wexford cannot be held liable under § 1983 for a constitutional violation caused by its employee unless a plaintiff can show the violation was caused by a corporate policy, custom, or practice within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). In *Shields*, we discussed at length whether we should revisit that issue. Ultimately we did not change circuit law on that point in *Shields*, but we invited fresh litigation of the issue. 746 F.3d at 790–96. Wexford was a defendant in the district court here, but Norwood and his counsel in the district court did not raise that issue in the district court, nor has Norwood done so in this pro se appeal. We do not consider it here.

The second major problem for Norwood's lawsuit is the difference between deliberate indifference under the Eighth Amendment and medical malpractice. Norwood received some treatment for his knee pain throughout the eight years covered by his lawsuit. When a prisoner receives some treatment, it can be difficult to prove a medical professional acted with deliberate indifference. E.g., *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). When a medical professional persists in a course of treatment known to be ineffective or that departs so far from accepted professional judgment, practice or standards as to support an inference that the decision was not actually based on even a mistaken professional judgment, a judge or jury can infer deliberate indifference. *Id.*, quoting *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc). In this case, Norwood's evidence might well support one or more malpractice claims, but we agree with the district court that his evidence does not support an inference of deliberate indifference.

I.    *Factual and Procedural Background*

Before he was imprisoned in 1999, Norwood had surgery on his right knee. In May 2006, he went to the infirmary at Stateville Correctional Center complaining of pain in his right knee after a fall. (The defendants note that Norwood's medical records from 2006 refer to his left knee, but on summary judgment we must accept Norwood's testimony that he actually injured his right knee.) Medical staff noted swelling, tenderness, and reduced range of motion and diagnosed a sprained knee. Two weeks later

Dr. Andrew Tilden examined Norwood. He ordered an X-ray and prescribed Motrin and an elastic knee bandage. Dr. Tilden refilled the Motrin prescription and reexamined Norwood's knee a few weeks later, this time seeing no swelling and noting that Norwood had a full range of motion.

Four months later, in November 2006, Norwood saw P.A. Williams and complained of continuing pain in his right knee. He also reported that he had not had the X-ray ordered by Dr. Tilden. P.A. Williams assessed crepitus (friction between bone and cartilage) in that knee and reduced range of motion caused by pain. She reordered the X-ray, prescribed an elastic knee support, and referred Norwood for evaluation by Dr. Ghosh, the medical director. Norwood's medical records do not reflect a visit with Dr. Ghosh or an X-ray of his knee in the wake of P.A. Williams' orders and referral.

Ten months later, in September 2007, Norwood returned to the infirmary complaining of increased knee pain. He reported feeling a popping in his right knee and said that his elastic knee supports had been confiscated by prison staff during a "shakedown" several months earlier. P.A. Williams examined Norwood and again noted crepitus, swelling, tenderness, reduced range of motion, and decreased strength in his right knee. She reordered elastic supports for both knees and again referred Norwood to Dr. Ghosh. Yet again, Norwood did not see Dr. Ghosh in the wake of that referral (or after P.A. Williams had made yet another referral a year later). And despite repeated complaints to P.A. Williams and a different staff member over the next three months, Norwood never did receive the knee supports.

On July 9, 2009—a full 32 months after his initial visit with P.A. Williams—Norwood returned to the infirmary reporting that his right knee had "popped" after he fell out of his bunk. He also reported pain. Once more P.A. Williams examined him. This time she noted that Norwood was limping, his right knee was swollen and tender, and he had reduced strength and range of motion in that knee. P.A. Williams prescribed a lower bunk, a food "lay-in," and ice and heat for the knee. She also referred Norwood to Dr. Ghosh yet again, anticipating a possible torn medial collateral ligament (MCL) or anterior cruciate ligament (ACL). That appointment was made for a week later.

This time, Norwood actually saw Dr. Ghosh, seven days later on July 16, 2009. Dr. Ghosh then asked Wexford to authorize an MRI. That request was approved, and an MRI was performed of Norwood's right knee in September 2009. The MRI confirmed a lateral meniscal tear, a full-thickness cartilage defect, effusion (fluid in the joint), and a partially ruptured cyst. Dr. Ghosh then obtained approval from Wexford to have Norwood evaluated by an orthopedic surgeon.

Norwood saw the outside orthopedic surgeon, Dr. Samuel Chmell, on November 23, 2010. Dr. Chmell noted that Norwood had complained for years of chronic knee pain, and he concluded that surgery was necessary. Surgery was initially scheduled for January 5, 2010, then delayed to March 30, and then again to April 27, when Dr. Chmell actually performed it. (There is no evidence that Dr. Ghosh or P.A. Williams was responsible for the delays in surgery.) During the surgery, Dr. Chmell found that Norwood did not have a torn meniscus, but he found cartilage damage at the end of the thigh bone and extensive inflammation of the lining of the knee. Dr. Chmell removed the inflammation and smoothed out the roughened cartilage.

After the surgery Dr. Chmell prescribed Vicodin "as needed" for pain. He also instructed Norwood to work on improving the range of motion of his knee and scheduled a follow-up evaluation for one week later. Norwood returned to the prison on the same day as the surgery and was admitted to the infirmary. Dr. Ghosh prescribed Tylenol 3 (with codeine) instead of Vicodin, and Norwood received that medicine. When Dr. Ghosh examined him the next morning, Norwood said that he wanted to be discharged from the infirmary. Because Norwood would not be permitted to take narcotic pain medication into the cell block, says Dr. Ghosh, he prescribed Motrin and crutches. Norwood says, though, that he was never actually given *any* pain medication after he left the infirmary, at least in those days after the surgery.

When Norwood returned for his follow-up visit with Dr. Chmell in early May 2010, he reported that he had not been allowed to take Vicodin and was experiencing discomfort in his knee. Dr. Chmell ordered Tramadol for pain and advised Norwood that the crutches were unnecessary. Dr. Chmell also requested that Norwood return in six months or sooner if needed. When Norwood returned to the prison, Dr. Ghosh prescribed Tramadol, which Norwood received for seven days before resuming Motrin. Dr. Ghosh never authorized the return visit to Dr. Chmell.

Norwood was next seen by P.A. Williams in July 2010. He complained that his right knee was painful and was swelling and "locking up" when he walked. Williams increased Norwood's dosage of Motrin and referred him to Dr. Ghosh for further evaluation. A week later Dr. Ghosh examined Norwood, noting that he complained of recurrent knee swelling and instability and had a reduced range of motion. Dr. Ghosh ordered physical therapy, which Norwood began attending once each week. Over the next five months, Norwood continued to report pain, instability, and reduced range of motion in his right knee. The physical therapist opined on more than one occasion that Norwood's progress was slow because he was attending only once per week. Norwood

saw Dr. Ghosh one more time in February 2011 and continued to complain of knee pain. Dr. Ghosh concluded only that Norwood should continue physical therapy.

Throughout 2011 Norwood continued complaining of problems with his right knee. In January 2012 the new prison medical director, Dr. Saleh Obaisi, sent Norwood back to Dr. Chmell, who ordered an X-ray and more physical therapy. After another examination near the end of 2012, Dr. Chmell diagnosed Norwood with osteoarthritis, gave him a cortisone injection, and ordered continued physical therapy. Then in September 2014, after Norwood's condition still had not improved, Dr. Chmell performed a complete knee replacement. Norwood continues to complain that the physical therapy and pain medication that he is receiving are inadequate, and that as a result, he is in constant pain and must walk with a crutch.

Meanwhile, Norwood had filed this action in February 2011. He claimed that, after his fall in 2006, Dr. Ghosh and P.A. Williams had been deliberately indifferent to his knee injury, resulting in ongoing pain and damage to his knee. As the litigation progressed, Norwood revised his claim of deliberate indifference to allege that the defendants' inaction had prompted his two knee surgeries and that he still was not receiving adequate medical care after his knee replacement. The defendants have not argued that Norwood's claims were untimely, even in part. The defendants moved for summary judgment on the merits of Norwood's claims.

In ruling against Norwood, the district court reasoned that P.A. Williams had prescribed numerous treatments beginning in 2006 after Norwood reported his first fall. P.A. Williams' failures to follow up on the treatments she had ordered, such as delays in delivering knee braces and losing them to security searches, the court reasoned, did not amount to deliberate indifference because it was not evident that P.A. Williams was responsible for such follow-up, let alone that she acted or failed to act with deliberate indifference to Norwood's medical needs. The court also found that Norwood lacked evidence that Dr. Ghosh had caused the delay before Norwood's first knee surgery. The court added that Ghosh's decision to prescribe Tylenol 3 with codeine instead of Vicodin had not amounted to deliberate indifference but instead was an exercise in professional judgment. The court also rejected Norwood's request for injunctive relief, concluding that he was receiving adequate care for his knee after the replacement. Finally, the district court declined to exercise jurisdiction over Norwood's state-law claim for intentional infliction of emotional distress.

II.    *Analysis*

    A.  *Claims Against Dr. Ghosh*

We start with the claims against Dr. Ghosh, whose care Norwood criticizes only as to isolated events. For one, Norwood theorized that Dr. Ghosh was deliberately indifferent because his first surgery was delayed four months after the originally scheduled date. We agree with the district court, however, that a jury could not hold Dr. Ghosh responsible for those delays. The record shows that Dr. Ghosh saw Norwood a week after P.A. Williams referred him, in July 2009, promptly requested an MRI, and referred Norwood for evaluation and ultimately surgery by an outside specialist. There were substantial delays along the way—nine months from Dr. Ghosh's examination in July 2009 until surgery in April 2010.

A delay in providing treatment that causes needless suffering can support a claim of deliberate indifference. See *Roe v. Elyea*, 631 F.3d 843, 865 (7th Cir. 2011); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). On this record, though, these delays look like features of the Wexford system of health care rather than anything Dr. Ghosh controlled. See *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (explaining that deliberate indifference can result only when delay in care was in control of defendant).

We also agree with the district court that a jury could not reasonably find that Dr. Ghosh was deliberately indifferent in not prescribing stronger pain medication during the four-month delay before surgery. Norwood's medical records show that he was not evaluated by Dr. Ghosh in the months after his appointment with Dr. Chmell, and there is no evidence that Norwood complained to any medical staff member that his pain medication was ineffective. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that defendant must have been subjectively aware of risk of serious harm for deliberate indifference to serious medical need); *Rice v. Correctional Medical Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) (same).

Norwood also argues that Dr. Ghosh showed deliberate indifference to his pain by prescribing Tylenol 3 with codeine instead of Vicodin after the 2010 surgery. The district court correctly reasoned that Dr. Ghosh's decision to substitute Tylenol 3 with codeine for Vicodin was a matter of medical judgment, and nothing in the record suggests it was against professional standards of care. See *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (affirming summary judgment for jail physician who exercised professional judgment in substituting non-opioid pain medication for detainees prior opioid pain medication, and who added medications to address opioid withdrawal symptoms). Vicodin is a mixture of acetaminophen (the same drug in Tylenol) and hydrocodone. While codeine is less potent than hydrocodone, both medications are

opioid pain relievers. Dr. Ghosh explained that the Stateville pharmacy did not stock Vicodin and that Tylenol 3 with codeine is an acceptable alternative. Norwood offers no evidence indicating that Dr. Ghosh's view was so far outside the bounds of professional judgment that a jury could infer that he did not actually exercise his professional judgment. See, e.g., *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Norwood counters that he never actually received even the Tylenol 3 with codeine that Dr. Ghosh prescribed. As troubling as that evidence is, the question of individual responsibility takes center stage again. No evidence actually shows that Dr. Ghosh knew that Norwood did not receive the prescribed pain medication.

Finally, Norwood complains about Dr. Ghosh's decision to switch his medication to Motrin the day after his surgery. Dr. Ghosh explained that he made this switch because the Tylenol 3 with codeine, as an opioid medication, could not be administered in the cell block. This explanation might seem troubling because Dr. Ghosh did not say why Norwood could not keep taking Tylenol 3 with codeine by returning to the infirmary each day so that the medication could be administered there, or why Tramadol—the medication Dr. Ghosh later prescribed after Norwood's follow-up visit with Dr. Chmell— was not an appropriate substitute. But again, there is no evidence that Norwood told Dr. Ghosh that he had significant pain during the six days he was supposed to be taking only Motrin, and Dr. Ghosh then prescribed the stronger medication Tramadol at the request of Dr. Chmell after the post-surgery appointment. We affirm summary judgment in favor of Dr. Ghosh.

B. *Claims Against P.A. Williams*

The district court found that a jury could not find that P.A. Williams was deliberately indifferent in failing to follow through on the treatments she ordered. She re-ordered an X-ray in November 2006 and prescribed Motrin and an elastic knee support, and referred Norwood to Dr. Ghosh. Norwood apparently got the Motrin and the elastic knee support, but not the X-ray or the visit with Dr. Ghosh. We cannot say that the partial follow-through would support an inference of deliberate indifference. As a physician's assistant, Williams was not in a position to order Dr. Ghosh or any other prison doctor to see Norwood.[1]

---

[1] We are aware of the tension inherent in affirming summary judgment for Dr. Ghosh on the ground that he did not actually see Norwood, despite P.A. Williams' referrals, and affirming summary judgment for Williams on the ground that she was not responsible for ensuring that Dr. Ghosh actually saw Norwood after her referrals. Under a regime of enterprise liability, as discussed in *Shields*, 746 F.3d at 790–96, this would not

Next, in September 2007, Norwood complained of increased pain and said his elastic knee supports had been confiscated several months earlier. P.A. Williams again ordered new knee supports, continued the Motrin, and again referred Norwood to Dr. Ghosh. Norwood was not satisfied with the pain treatment he was receiving, but we do not see a basis for finding that P.A. Williams' failure to treat his pain more aggressively amounted to deliberate indifference. See, e.g., *Holloway*, 700 F.3d at 1073–75 (affirming summary judgment for doctor who took detainee off of opioid pain medicine and prescribed less potent pain medicines); see also *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (affirming summary judgment for prison doctor based on pain treatment). We should not be understood as saying that ineffective pain treatment is always immune from Eighth Amendment scrutiny or liability. See *Holloway*, 700 F.3d at 1073–74; *Arnett v. Webster*, 658 F.3d 742, 753–54 (7th Cir. 2011) (collecting cases); *Gil v. Reed*, 381 F.3d 649 (7th Cir. 2004) (reversing summary judgment for prison physician who prescribed Tylenol 3 with codeine to inmate after surgery without justification and against surgeon's orders not do so because of side effects). But treating pain allows considerable room for professional judgment. Medical professionals cannot guarantee pain-free lives for their patients. We do not have specific evidence that P.A. Williams persisted in a course of pain treatment that was obviously inadequate.

Norwood also argues, in addition to the failure to treat his pain adequately, that P.A. Williams' (and Dr. Ghosh's) failure to provide more effective treatment from 2006 until steps were taken in the latter half of 2009 toward the first surgery caused his knee to deteriorate. In cases of delayed medical treatment for a prisoner, unnecessary pain may violate the Eighth Amendment, as we have discussed. Where deliberate indifference causes the delay and the delay aggravates the underlying condition, that additional injury may also be compensable. See *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (explaining that delay in treatment, rather than underlying injury, must cause "some degree of harm"); *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) (claim for delay causing injury requires plaintiff to offer "verifying medical evidence" that the delay rather than underlying condition caused some degree of harm).

---

be an issue, but under the requirement of individual responsibility, it is critical. The evidence here does not show where the breakdown in communication occurred, nor has there been an attack on Wexford's failure to ensure that individual medical professionals' orders and referrals were carried out. Cf. *Glisson v. Indiana Dep't of Correction*, 849 F.3d 372 (7th Cir. 2017) (en banc) (reversing summary judgment for corporate defendant; *Monell* liability could be based on evidence that corporation decided not to require coordination of care in complex case).

Dr. Chmell testified that the injuries he repaired in Norwood's right knee in 2009 could have been the result of a fall—as opposed to normal wear and tear—and that the failure to treat those injuries more promptly *could have* resulted in the osteoarthritis that later forced Norwood to undergo a full knee replacement. Dr. Chmell also testified that he had no opinion on Norwood's medical treatment at Stateville. In this sort of case, "could have" is not enough. The mere possibility that delays in treating Norwood's knee contributed to permanent damage falls short of verifying medical evidence that would allow a reasonable jury to find by a preponderance of the evidence that such causation actually occurred.

P.A. Williams also argues that it was the job of the medical technician to read and review her notes, to ensure that Norwood received the knee supports from central supply, and to ensure that Norwood saw Dr. Ghosh. P.A. Williams could rely on other medical personnel to carry out her directives, see *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010), though she could not turn a blind eye if it was obvious to her that other staff members were not following through on her orders. See, e.g., *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012); *Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009). The record here might support a claim that P.A. Williams was negligent in failing to supervise the follow-through on her orders better, but we do not see a basis for finding that her actions (or failures to act) amounted to deliberate indifference. The district court properly granted summary judgment for P.A. Williams on Norwood's Eighth Amendment claims.

Finally, after dismissing all of Norwood's federal claims, the district court declined to exercise jurisdiction over his state-law claim for intentional infliction of emotional distress. That was an appropriate exercise of the district judge's discretion under 28 U.S.C. § 1367.

The judgment of the district court is AFFIRMED.